HENRY REPP, SENIOR, AND OTHERS, *vs*. HENRY REPP, JU-
NIOR, AND OTHERS.—*June*, 1842.

A father, seized of land, conveyed it in fee to one of his sons, but retained possession, and about a year after agreed with him in writing, under the seal of both parties, that the father should retain, use and cultivate the land at a nominal rent during his life, and if his widow survived him, she should retain part of the dwelling house, with a garden, for her life. The son agreed on his part, to execute bonds to his brothers and sisters for the payment of four-fifths of the value of the land, to become due after the decease of his father, being the balance of the whole purchase money. The son executed the bonds to his four brothers and sisters, and the father continued in possession from 1824 to 1838, the time of filing the bill, meanwhile the son became an insolvent debtor, and conveyed the land to trustees for the benefit of his creditors under the insolvent laws, among whom were various judgment creditors. The agreement between the father and son was neither acknowledged nor recorded, and pending a bill filed by the father, brothers and sisters, to prevent a sale of the land until their bonds were paid, the father died. HELD, that a lien existed for the payment of the bonds out of the proceeds of the land, as against the son, his trustees and judgment and general creditors,

APPEAL from the Equity Side of *Frederick* County Court.

The bill in this cause was filed on the 26th September, 1838, by *Henry Repp, Senior, Jacob Repp, Susanna Long, Henry Smeltzer*, and others, and alleged, that on and prior to 16th May, 1823, *Henry Repp, Senior*, was seized and possessed of certain parcels of land, &c.; that being desirous to make such an arrangement for the benefit of his several children, as would secure to them after his decease the value of his said estate in equal shares, the said *Henry Repp, Senior*, the father, and *Henry Repp, Junior*, the son, *as a means and mode of effecting the said arrangement, agreed*, that the former should sell and convey to the latter, the said real estate hereinbefore described, at the price of $60 per acre, to be paid for after the decease of the said *Henry Repp, Senior*, in instalments, except as to one-fifth part thereof, which was to be retained by the said *Henry Repp, Junior*, as his own share; and that the said *Henry Repp, Senior*, notwithstanding this said sale and conveyance, should be permitted to occupy and cultivate the said farm, with restrictions only as to the right to cut green timber,

except for fencing, repairs and fuel; and that after the decease of the said *Henry Repp, Senior,* the said *Henry Repp, Junior,* should enter upon the said land, and hold the same subject to the payment of the purchase money, except as to one-fifth part as aforesaid; *that in pursuance of such agreement, and in part performance thereof,* the said *H. R. Sr.,* on the 16th May, 1823, did convey to the said *H. R. Jr.,* the said *first* mentioned *three* pieces or parcels of land, containing, &c., for the consideration of $9,120, and that afterwards, to wit, on the 26th May, 1823, the said *H. R. Sr.,* in further pursuance of said agreement, and in part performance of the same, did convey to the said *H. R. Jr.,* his heirs and assigns, the other piece or parcel of land, containing, &c.; that at the time of the execution of said deeds the said agreement *rested in parol,* although the provisions and stipulations thereof were fully and distinctly understood, and that the said two conveyances were made and delivered by the said *H. R. Senior, in pursuance and in part execution of the said agreement,* and not otherwise; that afterwards, the said *H. R., Junior,* complained that the price at which he was to pay for the said lands was unreasonably high, and that he was not content and willing to keep and hold the said lands at the said price, and that the said *H. R., Senior* and *Junior* called upon one *David Bowlus,* an intelligent surveyor, and the person by whom the said conveyances had been prepared, and upon consultation with him, and in consideration of a contingent provision to be made for the wife of the said *H. R. Senior,* with whom he had intermarried since the execution and delivery of the said conveyances, the amount of purchase money was reduced to $10,000, and it was then agreed as before, that of the sum of $10,000, the said *H. R. Junior* should retain the sum $2,000, part thereof as his own share of the purchase money so rendered, and that he should pay as the residue of the purchase money, to the said other children severally, the sum of $2,000 each, in six equal annual instalments, the first of which instalments was to be paid at one year after the decease of the said *H. R. Senior;* and it was also at the same time agreed as before, that

he, the said *H. R. Senior, during his natural life, should have the right to cultivate said farms in every respect as he might think proper, with restrictions only as aforesaid as to the right to cut green timber ;* that it was further also agreed, that in case *Christina Repp,* the wife of *H. R. Senior,* should survive him, she should also, during her natural life, be permitted to occupy unmolested and undisturbed, the south-east lower room in the Mansion House on said property, with a sufficient portion of the garden for her reasonable convenience; that the said *Christina* has since departed this life, leaving her husband ; that the said *David Bowlus* was requested by both parties to prepare all the necessary legal instruments for carrying said agreement into full effect, so as to secure to each child his or her equal part, according to said agreement; that a series of bonds, dated 3rd May, 1824, were accordingly prepared and executed by *H. R. Junior,* one set to *Jacob Repp,* one to *Susanna Long,* one to *Henry Smeltzer,* and another series to *Daniel Repp.* The bill further stated, that the said *D. B.,* at the same time, also prepared a certain agreement in writing, which was executed by the said *R. Senior* and *Junior,* and left in the hands of the said *D. B.* for safe keeping, and in whose possession the same now remains, a copy whereof is herewith shown as a part of this bill ; that since the execution of the aforesaid deeds, the said *Henry Repp, Senior, has continued in the use and occupation of said lands, and is now in the use and occupation of the same.*

The bill then further charged, that on the 3rd March, 1838, the said *H. R. Junior* executed and delivered to *Suratt D. Warfield* and *Jacob Fox,* a certain deed of trust for the benefit of his creditors, which includes the real estate aforesaid; that the said trustees have offered said property for sale, and allege and pretend that they have good right and authority to sell the same, and invest the purchaser with an absolute title in fee simple, disburthened of the particular estate of *Henry Repp, Senior,* and free of any lien or claim of the complainants for the unpaid purchase money ; that the said trustees had full notice of the agreement under which the conveyances were made by *H. R. Senior* to *H. R. Junior.*

The bill then claimed that the bonds were a lien on the land, and that *H. R. Senior* was entitled to the use and occupation of the land, and that the written agreement in the hands of *D. B.* is apt and sufficient to create a trust and confidence arising from the execution of the deeds, and that the same will be enforced as well against his trustees, as the said *H. R. Junior,* and prayed that a trust might be declared, established and enforced, and that *H. R. Senior* might be quieted in his possession, and their liens established. Prayer for subpœna and general relief.

With the bill was exhibited—

1. Indenture of 16th May, 1823, from *Henry Repp, Senior,* to *Henry Repp, Junior,* consideration $9,120, for a part of the land in the bill described.

2. Indenture of 26th May, 1823, from and to same, consideration $6,000, for another portion of the land.

3. The agreement between the father and son, as follows:

Agreement made this 3rd May, 1824, between *Henry Repp, Junior,* of, &c., of the one part, and *Henry Repp, Senior,* of, &c., of the other part. Witnesseth, that whereas the said *Henry Repp, Senior,* executed deeds of conveyance to the said *Henry Repp, Junior,* which are now duly recorded amongst the land records of *Frederick* county, for the quantity of 224 acres of land, more or less; and whereas, the said *Henry Repp, Junior,* executed sundry bonds to his brothers and sisters, bearing equal date with these presents for the payment of the said land, the amount of $8,000, agreeably to the request of the said *Henry Repp, Senior,* all of which bonds become due after the decease of the said *Henry Repp, Senior,* said bonds being the balance of the whole purchase money; and whereas, the said *Henry Repp, Junior,* hath this day rented unto the said *Henry Repp, Senior,* the aforesaid lands upon which the said *Henry Repp* now resides, situate, lying and being in the county aforesaid, containing about 224 acres of land, for and during the lifetime of him the said *Henry Repp,* at and for the sum of five dollars, current money, per year, during the time aforesaid, which said sum of money he the said *Henry Repp* agrees to pay unto the said *Henry Repp, Junior,* at the expiration

of each and every year the amount of five dollars as aforesaid; the said *Henry Repp, Senior,* may during his life cultivate the said farm or farms, lands aforesaid, in every respect as he may think proper, during his life as aforesaid, under this express proviso and restriction, however, that he the said *Henry Repp, Senior,* shall not be allowed to cut or destroy any green timber on the said land, more than is necessary in repairing the fencing on the land, or other improvements which may be made thereon, and his fire wood; and it is further agreed, that in consequence of the said *Henry Repp, Senior,* having sold the aforesaid land to the said *Henry Repp, Junior,* at a moderate price, he the said *Henry Repp, Junior,* doth hereby agree, that if in case *Christiana Repp,* wife of the said *Henry Repp, Senior,* should survive him the said *Henry Repp, Senior,* that she the said *Christiana* shall and may during her life, undisturbed and unmolested, occupy the south-east lower room, in the mansion house in which the said *Henry Repp, Senior,* now resides, situated on the within mentioned land, together also with a sufficient spot of ground in the garden as may be deemed necessary for her to have as garden. In due performance of this agreement, the parties hereunto bind themselves, each to the other, their heirs, executors or administrators, in the penal sum of five thousand dollars, current money.

In testimony whereof, the parties have hereunto set their hands and seals, the day and year first hereinbefore written. Possession is given from this date, 3rd May, 1824.

HENRY REPP, (Seal.)<br>HENRY REPP, (Seal.)

Signed, sealed and delivered in the presence of us,
    *John Dill, David Bowlus.*

I do hereby certify, that the above and foregoing is a true copy left in my possession for safe keeping.

*February 26th,* 1834.               DAVID BOWLUS.

4. Deed of trust of 3rd March, 1838, from *H. R., Junior,* to *Suratt D. Warfield* and *Jacob Fox,* reciting that *H. R., Jr.,* was an applicant for the benefit of the insolvent laws, and that the

grantees had been appointed his trustees, conveyed all his property for the benefit of his creditors generally.

5. Various bonds of H. R., Junior, for the payment of money of the 3rd May, 1824, to his brothers and sisters, were also filed with the bill.

The answer of Henry Repp, Junior, admitted the seizin of his father, and the execution of the two deeds of the 16th and 26th May, 1823, but denies at the time he purchased said lands or prior thereto, there was any agreement between him and his father, that the said defendant should pay for the said lands after the decease of H. R., Senior, by instalments, &c., and also denies that there was any agreement prior to or on the 16th May, 1823, that H. R., Senior, should be permitted to occupy and cultivate said lands, or that after his father's decease, should the same subject to the payment of the instalments; and also denied that H. R., Senior, in pursuance of any such agreement did convey to the said defendant the said lands in part performance; that if there ever was as stated in said bill the agreement therein set forth, as above denied, resting in parol, there was never any part performance thereof. The answer then relied upon the statute of frauds, and alleged that at the time he contracted for the said lands the purchase money was to be paid to H. R., Senior, and to no other person; that defendant bought the said lands as he would of any other person, and considered himself as a debtor to H. R., Senior, and no other person, and that no direction was at that time given to pay the purchase money to his other children. The defendant further alleged, that the agreement between him and H. R., Senior, other than the contract of purchase, as contained in the deeds, is the agreement of 3rd May, 1824, a true copy of which is filed with the bill. The answer then denied that instructions were given by H. R., Senior and Junior, to D. B., to draw an instrument different from the one thus exhibited, and that if any other exists, it is not in writing and is void in the absence of fraud or mistake. The answer admitted the execution of the bonds and the use, possession and enjoyment of the land by H. R., Senior, and objected that the agreement

of 3rd May, 1824, was not acknowledged nor recorded, and therefore inoperative to pass a freehold; and then admitted the deed to *Warfield* and *Fox*, and their attempt to sell the land, but denied that the bonds were a lien on the land in the hands of his said trustees or those purchasing from them. The answer also denied that there was any agreement between him and his father or brothers and sisters, that the said bonds should be liens, but that he held a free and unincumbered estate in the land; that he was forced to apply for relief under the insolvent laws, and there are many judgments against him now unpaid. The defendant also answered that it was true the bonds were given in consideration of the whole purchase money, which remains to be paid.

The answer of WARFIELD and Fox, the trustees, &c., took substantially the same grounds of defence as that of their co-defendant.

The general replication was filed, and a commission issued to take proof.

Under the commission, the draftsman of the agreement was examined, who proved that he drew the deed of 16th May, 1823, but it was not executed in his presence; that when the parties, the father and son came before him to execute the agreement of 3rd May, 1824, they had not agreed upon the amount of the purchase money, but ultimately, in consideration of *H. R.*, *Junior*, contending that the land did not hold out as stated in the two deeds of 1823, and in consideration of the provision for *Mrs. C. Repp*, the price was reduced from a sum not recollected, to $10,000, and that no part of the consideration had been paid at that time. The same witness proved the bonds, and the object of giving them, viz: to secure four-fifths of the purchase money; and that the agreement and bonds contained and carry out the views and purposes of the parties, and that he had no knowledge of any other agreement. There was some other proof not deemed material, as the facts are admitted in the answers. Proof of various judgments against *H. R.*, *Junior*, rendered in 1836, 1837 and 1838, was also filed, with the record of his application for relief under the insolvent law.

The case was submitted for final decree, waiving all matters of form and want of parties, agreeing that the land had been sold for $10,710, and that the bond-holders should have the same remedy and rights against the proceeds as the land itself, and the county court, (A. SHRIVER, A. J.,) by consent, dismissed the bill *pro forma* on the 22nd July, 1841, when the complainants appealed to this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By PALMER for the appellant—

After adverting to the facts, maintained, that a deed to take effect *in futuro*, was not a deed of bargain and sale, but a covenant to stand seized until the future day comes. The agreement of 1824, under hand and seal, worked that result upon the deeds of 1823, as respects *Repp, Junior*, and those claiming under him, and also left the merits open on this argument.

As a general rule, the vendor has a lien for purchase money. What are the exceptions to that rule? Upon what are they founded? Are the children of *Repp, Senior*, entitled to that lien? The bonds were not given to the vendor, but to those children? The father intended the children should have the land. This is the same here as a conveyance to them. The vendee must pay the purchase money before he gets clear of the lien. The lien exists in equity, and there the land is the vendor's until paid for. It is against conscience to take and not to pay. The vendee is a trustee for the vendor until payment. This is so in part or in the whole. If the property is sold by the vendee and not paid for, the purchaser may be affected by this lien for the sum due the vendor. Payment to the vendee, by a purchaser after notice of such lien, would not discharge the vendor's right. 2 *Sto. Eq.* 462, 464. Liens generally arise from constructive trusts—as contracts to convey. Trusts raised by implication of law are not within the statute of frauds. If the vendor agrees to trust the *personal credit* of the buyer, this is an exception, and a waiver of the lien. *Ib.* 470. The burthen of proof of displacing a lien is

on the purchaser. If doubtful the lien attaches. *Ib.* 471. Taking a security is only a presumption of waiver under circumstances, that is, a security independent of the purchaser, yet this only shifts the burthen of proof. 1 *Simon and Stuart,* 434.

Then a purchaser with notice is affected before purchase money paid. 2 *Sto. Eq.* 483. By the agreement of May, 1834, the purchase money was to be paid to the brothers and sisters, and at the father's death. The money belonged to the children. There was a privity of contract in equity. It was a family arrangement. In equity it is the father's land, hence his children, owners of the purchase money, have the same equity. Such is the reason and common sense of the thing, and there is no reason why the lien does not exist.

It is supposed the children are third parties and not entitled to the lien. The case of 7 *Wheaton*, 46, presented that question, but it was not decided. The cases of 3 *Atk.* 272 and 2 *P. Wms.* 291, are at the base of the opinion, that a lien will not pass to third persons, but they are overruled. It has been extended to legatees and assignees. In 4 *Harr. & John.* 522, it was awarded to a third party. So where a security pays the debt, the law assigns the lien as an incident of the debt. The lien may be transferred by contract. The cases relied on against the right are overruled by 15 *Ves.* 345; 9 *Ves.* 209; 4 *Russ.* 423; 8 *Simons*, 189. In favor of the assignees of the father, the children, and to show the lien passes to them, the counsel cited—2 *Burr.* 969. 2 *Gallison*, 155. 4 *Pick.* 131. 5 *Cow.* 202. 1 *John.* 581. 3 *John. cases*, 322. 11 *John.* 598. 7 *G. & J.* 120. 2 *Am. Eq. Dig.* 515. 4 *Littell*, 289. 5 *Munroe*, 287. *Yerger*, 84. 4 *Dana*, 1834. 3 *Simon*, 499.

Judge *Story*, in his *Commentaries on Equity*, 2 vol. 483, sect. 1233, is in error in citing 3 *Sim.* 499, as showing that third persons, to whom a part of the purchase money is to be paid, stand in no privity to establish a lien; that case decides a contrary doctrine, at least, does not decide the question of lien against the assignee.

Again, if the children here have a lien at all, they are in

before the trustee and judgment creditors. The act of 1805, ch. 110, sect. 5, only relates to the insolvent's funds and the mode of their distribution, and provision is made for judgments, liens and incumbrances; it does not disturb the general law, and assignees under deeds of trust take the thing conveyed, subject to all the equities which exist at the date of their deeds. 2 *Sto. Eq.* 481. 2 *Sug. on V.* 82, 74. 6 *Ves. n, a,* 95, collects all the cases on this head. 34 *Law Lib.* 327. 12 *Ves.* 346. 2 *Ves. & Bea.* 309. 2 *Ed. Rep.* 505. 1 *Serg.* 513.

Is a judgment against *Repp, Junior*, before his application under the insolvent law, a preferred lien to our claim. A judgment is a general lien, contracts are specific liens. A judgment binds what the defendant had. It gives no interest. It is but an authority to sell, a bare authority to convert the property, so that it ought not to prevail over a specific right. 2 *Harr. & John.* 64. 1 *P. Wms.* 278. 1 *Paige,* 125.

The possession of *Repp, Senior*, is sufficient to put all parties upon enquiry. It was notice at the time of the judgments rendered to the trustee. A secret equity cannot be set up against a judgment. But this is not a latent equity so long as the father remained in open use and occupation, which is notice. 10 *G. & J.* 324. 16 *Ves.* 220. 1 *Sto. Eq.* 388.

There is a trust of some kind for the benefit of the children, the bond-holders. The deed is not in fact what it purports in fact to be. It is contradicted by the fact which shows a family settlement, that ought to be enforced upon the death of the father, and denies that all the estate should be given to *Repp, Junior*. The agreement of the 3rd May. The bonds and possession of the father demonstrate the transaction, and let in the parol proof to explain doubtful parts, not to create the trust, but merely to mark its character. Thus the case is not within the statute of frauds. *Willis on Trust,* 20, 21. Any form of writing admitting the existence of a trust, lets in parol proof to show its character and nature. The recitals of the agreement of 3rd May bring this cause within that principle. 4 *Bro. C. R.* 472. 1 *Wash. Va.* 14, 17. 4 *Russ.* 423. 7 *G. & J.* 163. 1 *John. C. R.* 128.

The answer is overruled by slight circumstances. *Gresly Evid.* 4. 9 *Ves.* 584. 1 *Paige*, 209. 1 *Edw. Rep.* 442.

BRENGLE and T. C. WORTHINGTON, for the appellees, maintained—

1. The lien of the vendor for the purchase money of land, after a conveyance duly acknowledged and recorded, will not prevail against the judgment creditors of the vendee, claiming under the deed of trust of such vendee, under the act of 1805, ch. 110, and its supplements; such judgments being rendered prior to the application of said debtor for the benefit of the said insolvent laws, for debts contracted subsequent to said conveyance, and without notice of the said lien. 2 *Ves. & B.* 149. 2 *Serg. Ven.* 83, 75. 2 *Ves. & Be.* 83. 12 *Ves.* 192.

2. The lien of the vendor was extinguished or waived by the agreement, marked exhibit C, and the bonds for the purchase money executed to third persons by direction of vendor. 1 *Paige*, 20.

3. The lien of the vendor is confined to him, and his personal representatives, after his death, and is not assignable; but if assignable, the assignment must be in writing, and cannot be established by parol in favor of the assignee. 1 *Bland*, 519, 522. *Ambler*, 724.

4. If the bonds are tantamount to an assignment of the purchase money, they contain no guarantee on the part of the assignor, for the payment thereof; and the assignee having no recourse against the assignor, cannot assert through him, the lien of the vendor for the purchase money.

The obligees are assignees of the debt and not of the lien. The vendor directed the purchase money to be paid to them. The debt existed eleven months before the execution of the bonds. Then they are only an assignment of so much of the purchase money. 1 *Paige*, 501. 2 *Sto. Eq.* 428, *No.* 2. 4 *H. & J.* 522. 2 *H. & J.* 89, 87. 2 *H. & J.* 508. 5 *H. & J.* 42. 10 *Ohio Rep.* 318. 7 *G. & J.* 120.

Repp, *et al*, *vs.* Repp, Warfield and Fox.—1842.

5. The obligees in said bonds claim as donees under the vendor, and can only claim as such obligees; or in other words, as bond creditors of the vendee, and as such they cannot come in competition with the judgment creditors of the said vendee, under the said insolvent laws.

6. That there is no trust arising by construction or implication of law, and that there is no express trust sufficiently created or made.

7. That the said bonds are not a lien as against the said trustees of *H. Repp, Junior*, nor as against creditors generally.

BY THE COURT—

This court being of opinion that a lien for the balance of the purchase money on the land conveyed by *Henry Repp, Senior*, to *Henry Repp, Junior*, for the amount of the bonds of said *Henry Repp, Junior*, (principal and interest,) in favor of his four brothers and sisters, is established, as well against the said *Henry Repp, Junior*, his judgment and general creditors, and all the defendants in this cause, to be paid out of the proceeds of the said land, do hereby reverse the decree of *Frederick* county court, with costs, and order that this cause be remanded to said court as a court of equity, for the purpose of taking an account, and that the rights of the complainants may be ascertained and decreed upon in severalty, according to the principles and terms of this decree, and their equity in the premises.

DECREE REVERSED WITH COSTS, AND CAUSE REMANDED.

BUCHANAN, C. J., dissented.