(15 App. Div. 598.)

CENTRAL TRUST CO. OF NEW YORK v. WEEKS et al.

(Supreme Court, Appellate Division, Second Department. April 13, 1897.)

1. TRUSTS—INDIVIDUAL OR TRUST PROPERTY—EVIDENCE.
    A trustee, soon after his appointment, prepared a statement of securities held by him as such, including a certain mortgage. Thereafter he frequently represented to the beneficiary that such mortgage was a part of

the trust estate, and he remitted to her the interest until he was removed from office. *Held*, that such acts and declarations showed an intention to hold the mortgage as part of the trust estate.

**2. COUNTERCLAIMS—RIGHT OF ASSIGNEE.**
 A mortgagor, on foreclosure, will not be allowed a counterclaim against the mortgagee, where the mortgage, as an individual, had transferred the mortgage to himself as trustee for third person, though the mortgagor had no notice of such transfer.

Appeal from judgment on report of referee.

Transferred from First department.

Action by the Central Trust Company of New York, as substituted trustee of the separate estate of Isabel von Linden, against James Weeks and others, to recover possession of a bond and mortgage made by defendant James Weeks and his wife to Francis H. Weeks to secure the payment of $7,500, and also to compel an assignment thereof to plaintiff by defendant Richard G. Willing, as assignee of said Francis H. Weeks, to complete plaintiff's record title. There was judgment in favor of plaintiff, and defendant James Weeks appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles W. West, for appellant.

Alfred J. Taylor, for respondent.

WILLARD BARTLETT, J. Under an instrument executed by the Countess Isabel von Linden, at Stuttgart, in Germany, on August 27, 1889, Francis H. Weeks succeeded Daniel Morison as the trustee of the separate estate of the countess. The original trustee was her mother, Blandina B. Andrews; and Francis H. Weeks, or the law firm to which he belonged, had acted as counsel both for Mrs. Andrews and Mr. Morison in matters relating to the trust estate. In February, 1889, the year in which he became trustee, Francis H. Weeks prepared in his own handwriting a statement of the securities held by Daniel Morison, as trustee for the Countess Isabel von Linden, in which list we find mentioned a bond and mortgage for $7,500 from James Weeks, on property at Piermont, N. Y. These are the instruments which the plaintiff, as the substituted trustee of the countess, is seeking to recover in this action. Francis H. Weeks, by his individual name only, appears therein as the obligee and mortgagee. The bond and mortgage were dated on June 27, 1884, and on the day following Francis H. Weeks paid his brother, James Weeks, the $7,500 consideration which they expressed. Wherever this money came from, it is certain that from and after February, 1889, whenever Francis H. Weeks had occasion to make any representation concerning the James Weeks bond and mortgage to the beneficiary under the trust, he invariably represented it to be a part of the trust estate. It is shown that he received and deposited in his own bank account $10,500, proceeds of a mortgage denominated the "Folsom Mortgage," which belonged to this trust. What he did with this money is not disclosed, but it is by no means improbable that a part of it formed the consideration for his broth-

er's mortgage.    However that may be, Francis H. Weeks, so long as he remained the trustee of the Countess von Linden, which was until he was removed by an order of the supreme court on July 11, 1893, remitted to her the interest on this bond and mortgage, and included them in his statements of the securities which he held as her trustee; and in the autumn of 1892, having executed in his individual name an assignment of the securities to himself as such trustee, he exhibited it to Mr. Clarence Andrews, the brother of the countess, who wanted him to verify in her behalf his statements as to the condition of the estate.    In October of that year he wrote her:

"In the same way all the mortgages which I hold for your trust fund are in my name as trustee, just as during your mother's lifetime they were in her name as trustee. and afterwards in Mr. Morison's name as trustee. They are not in your name, but in the name of Francis H. Weeks, as trustee of the separate estate of Isabel von Linden."

These circumstances, I think, manifested the clearest intention on the part of Francis H. Weeks to hold this mortgage in trust for the estate.    His acts and declarations in reference to it from February, 1889, a few months before he became trustee, while he was counsel for his predecessor, all through his own trusteeship, are consistent only with an undertaking and agreement on his part that it should become and was a part of the trust property, and that he did and would hold it as such.    In other words, his conduct created a valid trust, of which his brother's mortgage became the subject. Hamer v. Sidway, 124 N. Y. 550, 27 N. E. 256.    The mortgagor, James Weeks, met the plaintiff's demand by a plea of payment, which there was an utter failure to support by proof, and by a counterclaim or equitable set-off averring that prior to the commencement of this action, and prior to the insolvent assignment of Francis H. Weeks, which was made on April 27, 1893, Francis H. Weeks was indebted to James Weeks upon an account for money lent in the sum of over $19,000, which sum was then due and payable, and was a debt incurred in good faith, without any notice to the said James Weeks of any alleged assignment of the bond and mortgage in suit, or of any claim thereto on the part of any trustee.    The answer of the appellant contained also this averment in regard to such counterclaim:

"That, when said debt was so contracted. this defendant was connected in business with one Edwin C. Weeks, and had no interest in or title to said debt and claim; that thereafter, and before the commencement of this action, and on or about the 26th day of October, 1893. the said Edwin C. Weeks duly executed, in writing, an assignment to this defendant of any right, title, or interest he might have in and to said debt and claim."

It appeared upon the trial that the indebtedness thus referred to arose upon a brokerage account between Francis H. Weeks and Weeks & Co., a business concern consisting of James Weeks and his son Edwin C. Weeks.    In behalf of the appellant there was an attempt to prove that the relation of father and son was not that of partners, and that the debt from Francis H. Weeks was really to James Weeks individually, sub nomine Weeks & Co.    Accepting as true the testimony of James Weeks as to the arrangement with his

son, it seems to me quite clear that the interests of both were so joined in the business as to preclude the maintenance of a suit against Francis H. Weeks on the account in question by James Weeks alone, before Edwin C. Weeks transferred to him his rights therein, and this was not done until October 26, 1893. It was not until this date, therefore, if I am right in the view that the debt of Francis H. Weeks on the account was to Weeks & Co. instead of James Weeks, that the latter was in a position individually to assert any claim on the account as against Francis H. Weeks. But, even under these circumstances, contends the appellant, the debt may still be counterclaimed in this action by James Weeks, inasmuch as it was assigned to him before the commencement of this suit, and before he had any notice of the assignment of the mortgage by Francis H. Weeks individually to Francis H. Weeks as trustee, or any knowledge of any conduct on his part which made it the subject of a valid trust. It seems settled by authority, however, that no notice is necessary to perfect the rights of the assignee of a chose in action in a case of this kind. Such is the effect of the decision in Beckwith v. Bank, 9 N. Y. 211, where it was held that section 112 of the old Code of Procedure (for which section 502, Code Civ. Proc., is a substitute) was not intended to change the subsequent rights of parties, but only to introduce such alterations in the mode of protecting them as were rendered necessary by the requirement that in most cases the real party in interest should be the plaintiff. It follows that whenever Francis H. Weeks, as trustee, acquired this mortgage, his title thereto as such trustee became perfect without any notice to James Weeks. When did he acquire title thereto in his trust capacity? I think the fair inference from all the testimony is that he dealt with it as the property of the estate of the Countess von Linden from the moment he actually became her trustee, and I think the rights of the parties are to be determined as though it had been then formally assigned to him as such trustee. If so, it matters little whether the alleged counterclaim belonged originally to Weeks & Co. or James Weeks individually; for while there are accounts covering the period in 1889 when Francis H. Weeks assumed his trust duties, showing a balance in favor of Weeks & Co. against Francis H. Weeks, it is conceded by the appellant's counsel that the proof does not show that Francis H. Weeks was then indebted to Weeks & Co. over and above the collateral which they held, and equity would compel the brokers to resort to such collateral, and thereby extinguish the indebtedness, if it sufficed for that purpose, rather than permit them to offset their claim, without regard to the collateral, against the mortgage in suit. The judgment should be affirmed, with costs. All concur.