# JACOB A. DOXEN

*vs.*

# MARTIN R. WAGNER ET AL.

*Payment on Mortgage—Check Handed to Third Person—
Attorney and Client—Evidence.*

Where a check drawn to the order of a corporation mortgagor was handed to the treasurer of the corporation by one about to purchase the mortgaged property from the corporation, with the request that it be applied on the mortgage, and the check was deposited to the credit of the corporation, *held* that the payment was to the corporation and could not be regarded as made to the treasurer for the benefit of the mortgagee, whose attorney he happened to be.          p. 445

A mortgage may be assigned for collection, with the result that the assignee holds the mortgage as trustee for the assignor.
p. 446

A payment made by one purchasing mortgaged land from a corporation, by handing to an officer of the corporation a check drawn to the order of the corporation, with directions to apply it on the mortgage, is not to be regarded as made to the mortgagee because the mortgage is subsequently assigned to such officer, the mortgagee's attorney, for collection.          p. 446

Property held by a trustee cannot be subjected to claims against the trustee, even in favor of persons ignorant of the trust, unless credit was given on the strength of the trustee's apparent ownership.          p. 447

A purchaser of mortgaged property, for which he still owes a considerable sum, is not injured by the failure of his vendor, a corporation, or of an officer thereof, to apply on the mortgage, as requested by him, a payment of a less sum made by him to the corporation, and there is consequently no equity in favor of regarding such payment, as against the mortgagee, as a payment on the mortgage.          pp. 449, 450

That an attorney said to one about to purchase mortgaged property that if the latter would pay him a named fee, he would prepare a deed and a new mortgage, and that if such purchaser would pay off a part of the mortgage, he would "finance" it for such purchaser, *held* not to establish the relation of attorney and client, it not appearing that the offer was accepted, and such purchaser's conduct indicating that he did not regard the relation as existing.                     pp. 450, 451

That the purchaser of mortgaged property handed to his attorney a check drawn in favor of the vendor company, of which such attorney was treasurer, with directions that it be applied on the mortgage, and that it was not so applied, would not justify the court, upon the subsequent assignment of the mortgage by the mortgagee to such attorney, for the purpose of foreclosure, in charging him, as the holder of the mortgage, with the amount of the check, to the detriment of the mortgagee.                     pp. 446, 452

A company which receives money under an express trust to apply it on a certain mortgage cannot repudiate the trust and retain the fund, and that there were general creditors of the company without notice, at the time the trust was created, cannot affect the company's status and obligations in respect to that fund.                     p. 452

*Decided January 12th, 1923.*

Appeal from the Circuit Court for Harford County, In Equity (HARLAN, J.).

Bill by Martin R. Wagner and Augusta M. Wagner, his wife, against Jacob A. Doxen, to enjoin a sale under mortgage. From a decree for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Thomas H. Robinson,* for the appellant.

*Stevenson A. Williams* and *Robert H. Archer, Jr.,* with whom were *Philip H. Close* and *Fred R. Williams* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On the 8th day of September, 1919, the Farmers Co-operative Company of Harford County, then owning certain real estate in the village of Churchville in that county, executed a mortgage on it to George F. Berkley to secure the repayment of a loan of $4,500. In addition to that property the company also owned certain personal property. At a meeting held on February 4, 1922, the stockholders of the company were informed that it was in bad financial condition and was indebted to various creditors to the amount of $13,500, but that Martin R. Wagner had offered to buy all the property of the company and sufficient stock to control it for $12,500. This offer was accepted and it was agreed that, upon the payment of $10,000, the property of the company was to be turned over to Mr. Wagner, and that it was to be paid for in this way. He was to assume and pay the $4,500 mortgage, and to assume and pay the company's note to the Farmers & Merchants National Bank of Bel Air for $4,500, and its note to Mr. Joseph Ball for $1,000, and the remaining $2,500 was to be used in buying a sufficient number of shares of the capital stock of the company to control it. Wagner paid the $4,500 note to the bank and on March 4, 1922, gave Jacob A. Doxen, the secretary and treasurer of the company, a check drawn to the company's order for $1,000 and directed him to apply it to the reduction of the Berkley mortgage. The check was deposited in bank to the company's credit. Some time later several changes were made in the personnel of the company's directors and officers, and among the other changes M. N. Stewart was selected as its secretary, and Wagner as its treasurer, instead of Doxen. After these changes had been made, the company on May 31, 1922, con-

veyed all of its property to Martin R. and Augusta M. Wagner. On June 1st, 1922, Berkley entered a credit on the mortgage for $500, which appears to have been paid in 1921, and assigned the balance by an assignment absolute on its face, but actually for collection, to Jacob A. Doxen, the appellant, who was a practicing attorney, and Doxen then advertised the property for sale under a power of sale contained in the mortgage. Thereupon the appellees, then holding title to the mortgaged property, deposited $3,500 with the clerk of the court and filed the bill of complaint in this case, in which they asked that the appellant, "Doxen may by an order of your honors be enjoined and strictly prohibited from selling, assigning or otherwise disposing of the aforesaid mortgage from the said Farmers Co-operative Company of Harford County, Inc., to the said George F. Berkley, dated the 8th day of September, 1919, and recorded among the Land Records of Harford County in Liber J. A. R. No. 165, folio 262, or from proceeding further with the exercise of the power contained in said mortgage, or from selling or offering for sale said real estate therein described," and upon that bill, affidavit and exhibits a restraining order was passed as prayed.

An answer was filed, testimony taken and, after a hearing, a decree was passed making the injunction perpetual and crediting the mortgagor with the payment of $1,000 on the mortgage. From that decree this appeal was taken.

The bill, order and decree all rest upon the theory that the $1,000 was paid to Doxen to be applied to the reduction of the mortgage and that, since he did not so apply it, and since he now holds the mortgage, he must be charged with it as though it had been so applied without regard to the capacity in which he holds it. The defendants' theory is (1) that the money was never paid to or received by Doxen, but that it was paid in the form of a check drawn to the order of the Farmers Co-operative Company, which was handed to Doxen and by him deposited to that company's credit, where it still

remains; (2) that Doxen at the time the money was paid was not the agent of the mortgagee authorized to receive it for him, but was the secretary and treasurer of the mortgagor, and that the company alone had the power to apply the payment to the mortgage; (3) that he at present holds the mortgage only as trustee for the real owner thereof and that his *cestui que trust* cannot be charged with a payment which he never received, even though Doxen had received the check at a time when he did not represent Berkley. Since these contentions are in conflict, it becomes necessary to examine in some detail the evidence bearing on them.

The case is controlled by comparatively few facts, and the evidence concerning them can be considered under two heads: (1) Was the $1,000 payment made to the company, or, was it made to Doxen, (*a*) as an individual, (*b*) as agent for Berkley, or (*c*) as agent for Wagner? (2) Were the appellees prejudiced by the fact that the payment was not applied in reduction of the mortgage?

Taking up these questions in their order, the uncontradicted evidence shows that the check was drawn to the order of the Farmers Co-operative Company, and after the endorsement of that company had been stamped on the back, it was presented at the bank on which it was drawn and the company credited with the proceeds. There is no evidence that Doxen personally ever in any way received any part thereof. It is also undisputed that when it was signed and delivered to Doxen, the check bore the following notation: "For on account of Churchville property." Wagner contends that when he signed the check the name of the payee was blank, but the evidence is to the contrary. Both Doxen and Mrs. Mildred Bailey, the stenographer who prepared the check and who is wholly disinterested, testified positively that when Wagner signed it the check contained the name of the payee, and as against the uncorroborated testimony of Wagner this must be accepted as conclusive, for considered in the light of common experience it is incredible

that a business man of ordinary prudence would make a payment of $1,000 on account of a mortgage, which was a lien on property which he had agreed to purchase, by a check in which the name of the payee was not filled in. A check drawn to the order of the company, his vendor, would afford intrinsic evidence of a payment on account of his debt to the company; a check drawn to the order of Berkley, the mortgagee, would show a payment on account of the mortgage; but a check drawn to the order of Doxen would in itself indicate neither of these things.

A more orderly, natural and prudent course was that adopted in this case, which was to make the check payable to the vendor, who was also the mortgagor. Doxen was not the mortgagor, but only the secretary and treasurer of the company which owed the mortgage debt.

But even if we could assume that the appellee intended to make the payment to Doxen and not to the company, and that Doxen agreed to pay it on the mortgage, nevertheless, Berkley, who neither knew of nor authorized, nor ratified his acts, could not be made to answer for any loss which they occasioned.

It is uncontradicted that the mortgage was assigned to Doxen only for the purpose of collection, and he therefore holds it as trustee for Berkley. The mortgage was *bona fide* and the assignment was made in good faith for the purpose stated. There is nothing illegal about such a transaction (*Bouldin* v. *Reynolds,* 58 Md. 491; *Russum* v. *Wanser,* 53 Md. 92), and the practice of assigning mortgages to agents or attorneys for collection has long been recognized and frequently adopted in this State, and its validity is well settled, and it is equally well settled that in such cases the assignee holds the mortgage as trustee for the assignor. *Bouldin* v. *Reynolds,* 58 Md. 495. The appellee was not a creditor of Berkley, and he had not paid the thousand dollars either to him or to any person authorized by him to receive it, because the assignment to Doxen was not made until long after

that money was paid and the evidence shows that he did not know of the payment when he assigned the mortgage to Doxen.

Since Doxen held the mortgage in trust for Berkley, it could not be subjected to any claims, no matter how well founded, which Wagner may have had against him, for trust property is not liable for the trustee's debts, and cannot be reached by attachment, or execution, even though the creditors have no knowledge of the existence of the trust, the estate being in the name of the trustee (39 *Cyc.* 227, &c.), and in 26 *R. C. L.* 1261, title Trusts, it is said: "Where a deed to a debtor conveys to him only a naked legal title, as a trustee for others, he takes under it no interest that can be seized under execution or attachment, nor can a judgment creditor have his claim satisfied out of property held in trust for another, no matter how completely his debtor may have exercised apparent ownership over it, unless it was on the faith of such ownership that the credit was given." 23 *C. J.* 342; *Cook* v. *Brice,* 20 Md. 397. So that even if Doxen had converted the money to his own use instead of paying it to Berkley, Wagner could not take Berkley's property to reimburse himself for such loss as he may have sustained as a result of Doxen's failure to carry out his instructions, in the absence of any evidence that Berkley authorized or knew of the transaction, and, in the absence of any evidence to the contrary, it is reasonable to assume that the check was delivered to him for the company. For since the check was drawn to the order of the company when it was signed, we must presume that Wagner meant to make the payment to the company, as in fact it was made, and it became the duty of the company and not of Doxen to have applied it in accordance with the note written on the face of the check to the reduction of the mortgage. Certainly Doxen, unless thereto authorized by some appropriate corporate action, could not himself appropriate funds standing to the credit of the corporation to the satisfaction or reduction of the mortgage debt.

The second inquiry is, how were the Wagners injured by the failure of either Doxen or the corporation to apply the $1,000 to the reduction of the mortgage. And in connection with that question it is important, but upon the record very difficult, to ascertain just what was the contract between Martin R. Wagner and the company. James T. Evans, president of the company, in his testimony gave this description of the transaction: "We agreed at that time to sell the controlling interest in the company to Dr. Wagner, with the provision that he sustain the losses and manage the property. The property was to be turned over to him upon the payment of $10,000—$4,500 to the bank, assuming a mortgage of $4,500 on the real estate, and arranging for the payment of a note of $1,000 that Mr. Ball held. The other $2,500 he was to assume and use it in paying the stockholders for the stock that he was to buy." Martin R. Wagner, an appellant, on his cross-examination gave this version of it: "Q. You had agreed to pay $12,500 for the property, had you not? A. Yes, sir; for the property and the trucks. Q. I call the trucks and the house property? A. Yes, sir; I agreed to pay $12,500 for them. * * * Q. Now, I want to get out of you where you have paid $12,500 for the assets of the company?' (Mr. Williams): The price that was talked of was $12,500, and of that price he was to pay $2,500 in one year; he had that long to pick up the stock and only $10,000 was to be paid in cash. A. I was to pay for the property and then pick up what outstanding shares I could. Q. But you were to pay $12,500 for the property? A. Yes, sir; but I had twelve months in which to pay the $2,500." Joseph Ball, who was at the meeting of March 4, 1922, when asked about the transaction, testified as follows. "Q. Do you know how much Dr. Wagner was to pay for the property that he bought from the company? A. Yes, sir. Q. How much? A. He was to pay $12,500. Q. You had debts, and he was to pay $12,500? A. Yes, sir. Q. He would not know of the note in bank unless he was told, would he? A. Yes, sir, it is recorded.

Q. He was to pay $12,500 ? A. Yes, sir. Q. Do you know how much he has paid ? A. He has taken care of the note at the bank, and has paid $1,000 on the Churchville property; and, when he gets finance for the property, he is going to pay me. Q. But he hasn't paid you, has he? A. No, sir." This is substantially all the testimony on the subject. There was no written memorandum of the contract, either of the proposal or acceptance, nor were there offered in evidence any minutes of the stockholders' meeting at which the matter was discussed, which shed any light upon the subject, and the secretary of that meeting spoke only in the most vague and general terms of what was done there in respect to the sale of the company's property to Wagner. It does appear from this testimony (1) that the company agreed to transfer all its tangible assets to Wagner and (2) that he in consideration of that transfer agreed to (*a*) pay a mortgage of $4,500 on the company's real estate, (*b*) to pay its promissory note to the Farmers & Merchants Bank for $4,500, (*c*) to pay the Ball note for $1,000, and to pay $2,500 for enough stock to control the company, although there is nothing to show how much stock was needed for that purpose, nor is it clear whether he was to buy the stock from the corporation or from its stockholders. But it is clear that in the purchase of the company's property he was to pay the mortgage to Berkley, the note to the bank and the note to Ball, and these payments were not dependent upon his purchase of the stock. He paid the note for $4,500 due the bank, and he paid $1,000 to the company, to be applied to the reduction of the mortgage. He did not pay the Ball note nor did he pay the balance due on the mortgage. The company is in each of these cases the debtor primarily liable, and the company has conveyed to him all of its tangible property subject to the lien of the Berkley mortgage, and he therefore owes the company at least such sum of money as may be required to pay these unpaid debts. It is not therefore apparent how he was injured by

the failure of the company to pay the $1,000 on the mortgage, because he can at any time apply the $4,000 which he owes the company to the satisfaction of the mortgage. The evidence does not show that he is indebted to Ball on account of the $1,000 note, but that he promised the company to pay its debt to Ball. That he failed to do that is evident, because Ball still holds the note against the company and the endorsers, of whom Doxen is one. If the company refuses or is unable to pay the $1,000 on account of the mortgage, but retains it for its own purposes, it could not in addition demand that Wagner pay it $1,000 to pay its debt to Ball, and if Wagner should pay the $4,000 due to Berkley on the mortgage, he would have fully paid for the property purchased from the company (not including the stock), and would hold it unencumbered. If on the other hand the $1,000 paid to the company is credited on the mortgage, the mortgagee would be compelled to take $3,000 for his $4,000 debt, and the money thus taken from him would be turned over to the company which the appellee is to control for no consideration whatever. Certainly such a result is required by no principle of law or equity which can be applied to the facts of this case.

The appellee, however, contends that Doxen received the check under a contract of employment as Wagner's attorney and diverted it to the company's credit, because he was himself a creditor of the company, and that therefore he, as the present holder of the mortgage, should be charged with it. Without conceding in any way the principle involved in that proposition, the evidence fails to prove the facts relied on. Wagner does, it is true, say: "I went to see Mr. Doxen about making a deed when I was able to pay that note at the bank for $4,500, paid Mr. Joe Ball's note of $1,000, and assumed three-fourths of the mortgage on the property—I was paying $1,000 on that mortgage—then I was to get control of the remaining property. Mr. Doxen said that if I would pay him $40, he would write me up a deed and a new mortgage; and, if I paid off $1,000 on the mortgage, he was willing to

finance it for me. I gave him the check for $1,000; and Mr.
Evans asked him if he could have the deed ready on Monday;
and Mr. Doxen said that Monday was a busy day with him,
but he would get it ready as soon as he could—then Mr.
Doxen set March 20th as the day that he would have the
deed ready. * * * Q. What was that $1,000 for? A. My
understanding was that it was for the George Berkley mort-
gage on the Churchville property. Q. And Mr. Doxen was
to finance the balance of it? A. Yes, sir, provided I paid
him $40 for writing the deed and drawing a new mortgage,"
and later he added that Doxen promised on March 4th to
"finance it." And Mr. Evans, who was present, testified:
"It seems that Dr. Wagner had a little trouble in assuming
the mortgage, financing it. I don't know how it came up
between him and Mr. Doxen, but the talk was that if he
would pay Mr. Doxen for his services and pay off $1,000 on
the mortgage, Mr. Doxen would finance it for him. Q. Did
he pay off the $1,000? A. He did soon after that. (Mr.
Robinson): How do you know that? (The Witness): I was
present when the check was drawn. I didn't look at the face
of the check, but I saw the check drawn, heard it talked over,
and saw the check passed. Q. Go ahead with your answer?
A. Dr. Wagner asked for a receipt against the mortgage,
and Mr. Doxen said that he would not give him a receipt,
but that he would put it in the check, and that would be
better than any receipt that he would write—he said he would
write it on the face of the check." But not only is this
evidence unconvincing, but it is clear from all the testimony
that Wagner did not regard Doxen as his attorney. He does
say that Doxen offered to write him a deed and mortgage
and to "finance" his purchase if he paid off $1,000 on the
mortgage and if he, Wagner, paid him forty dollars, but it
does not appear that Wagner ever accepted that offer, but on
the contrary he definitely says that he did not owe "Doxen
anything to close it up." His conduct too indicated that he,
at least, did not recognize Doxen as his attorney. Doxen

wrote him on three several occasions, on March 24th, April 11th and April 22nd, 1922, urging him to carry out his contract of purchase so that a deed for the property could be given him, but he never orally or in writing made any reply to any of these letters, although he said Doxen promised to "finance it," and have the deed ready by March 20, and about the middle of May he employed Mr. Archer as his attorney. His silence under those circumstances is not consistent either with the theory that Doxen was his attorney or that Doxen was to finance his purchase.

We do not think it possible from the testimony to say either that Doxen was Wagner's attorney or that Wagner thought he was his attorney. But even if he had acted as his attorney in receiving the $1,000 check, that fact alone could not justify the Court in taking $1,000 from Doxen and giving it either to Wagner or Wagner's company. There is no proof (*a*) that Doxen ever converted the check to his own use or (*b*) diverted it to any person or payee other than that named in the check, (*c*) or that he could have done anything except what he did do in connection with that check, or (*d*) that the company has ever refused upon request to apply this $1,000 on account of the mortgage. Indeed it cannot be doubted that the company, should it refuse, would, upon the facts shown, be compelled to so apply it. Because it received the money under an express trust to apply it to a particular object (26 *R. C. L.* 1200, 39 *Cyc.* 71), it would not be permitted to repudiate the trust and at the same time retain the fund. Nor would the fact that there were general creditors without notice at the time the trust was created affect the company's status and obligations in respect to that fund, for, as was said in *Carson* v. *Phelps,* 40 Md. 99: "This trust thus validly created is binding against Carson and his representatives, and notwithstanding the failure to record the deed, it is valid and will be enforced in equity against his general creditors. This doctrine is well settled and has been recognized in Maryland in a great number of cases, and is alike applicable,

DOXEN *vs.* WAGNER. 453

whether the trust be expressly created by deed unrecorded, or whether it arises from a valid contract in writing for specific security. *McMechen* v. *Maggs,* 4 H. & J. 132; *Tiernan* v. *Poor,* 1 G. & J. 216; *Moale* v. *Buchanan,* 11 G. & J. 315; *Repp* v. *Repp,* 12 G. & J. 341; *Alexander* v. *Ghiselin,* 5 Gill, 139, 185; *Price* v. *McDonald,* 1 Md. 403, 414, 415; *Johnston* v. *Canby,* 29 Md. 216." In the absence of such proof we know of no principle of law which could justify the court in charging Doxen personally with the receipt of the money, and deducting it from the mortgage which has been assigned to him for foreclosure, and if there is any authority for a proceeding so unusual it has not been brought to our attention. There is no evidence in the case that Berkley was ever consulted as to the payment of the $1,000 on the mortgage which was in default, or that he agreed to accept any such payment, nor that Doxen, at the time the check was paid, was authorized to receive it in partial satisfaction of the mortgage, but even if there had been authority for the payment, Wagner must have known when he drew his check to the order of the company that Doxen could not appropriate the proceeds to the mortgage unless directed by the company.

For the reasons stated we are unable to agree with the conclusion reached in the very careful opinion of the learned judge who tried the case in the lower court, and in our opinion the bill should have been dismissed and the injunction dissolved. In view of this conclusion, involving as it does a pure question of fact, it becomes unnecessary to deal with the interesting legal questions presented in the argument of counsel.

> *Decree reversed and bill dismissed, with costs*
> *to the appellant.*