CHURCHVILLE CIRCUIT OF THE METHODIST
EPISCOPAL CHURCH, vs. CHARLES H.
MacNABB, assignee, et al.

*Agency—To Receive Payment—Director of Bank—Assignment
of Mortgage—Notice to Mortgagor.*

That one was a director of a bank and also its counsel did
not authorize him to collect on behalf of the bank any part of
the principal and interest due the bank on a mortgage loan,
nor did the bank's acceptance from him of payments of inter-
est made to him by the borrower show such authority or amount
to a ratification thereof.                                      p. 111

A loan having been made by a bank on the application of
one of its directors, to whom the mortgage securing the loan
was made, and by whom the mortgage was assigned to the bank,
*held* that the application was made by such director as agent
of the borrower, and the bank was justified in assuming that
subsequent payments of interest to it by such director were
made by him as such agent.                                     p. 111

The principle that one, who has dealt with an agent within
the limit of the agent's authority, has the right to assume the
continuance of such authority until informed of its revocation,
does not apply in favor of one who dealt with such agent, not
as agent, but as principal.                                    p. 112

A director of a bank has as such no authority to receive pay-
ments on account of a debt due the bank.                       p. 112

A mortgage having been assigned to a bank shortly after its
execution, the assignment promptly recorded, and the mortgage
kept in the possession of the bank, the mortgagor was charged
with notice of the assignment, and could not charge the bank
with payments made by the mortgagor to the mortgagee on
account of the mortgage.                                       p. 113

*Decided February 1st, 1924.*

Appeal from the Circuit Court for Harford County, In
Equity (HARLAN, J.).

Bill by the Churchville Circuit of the Methodist Episcopal Church against Charles H. MacNabb, assignee, and the Forest Hill State Bank. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Harry S. Carver*, for the appellant.

*Stevenson A. Williams* and *Charles H. MacNabb*, with whom was *Fred. R. Williams* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 22nd of January, 1914, The Churchville Circuit of the Methodist Episcopal Church, a body corporate, executed to Henry A. Whitaker a mortgage of a lot or parcel of land, containing about two acres, and improvements thereon, situated in Harford County, Maryland, and known as the "Churchville Parsonage of the Churchville Circuit," to secure the payment of a loan of nine hundred dollars at the expiration of three years from said date, and the interest thereon, payable annually, "said loan (according to the recital in the mortgage) having been authorized by the trustees of said Circuit at a regular meeting." On the 3rd of February, 1914, the mortgage was duly assigned by Whitaker to the Forest Hill State Bank, and on the same day both the mortgage and the assignment were recorded among the Land Records of Harford County. On the 31st of May, 1923, the bank assigned the mortgage, "for the purpose of foreclosure," to Charles H. MacNabb, who advertised the property for sale on July 30th, 1923, whereupon the mortgagor filed a bill in the Circuit Court for Harford County against Charles H. MacNabb, assignee, and the Forest Hill State Bank, alleging that all of said mortgage debt had been paid by the mortgagor except $223.05 and interest thereon from January 13th, 1919; that the plaintiff had never been notified by Whitaker or the bank that the mortgage had been assigned to the bank, and that it had no knowledge of the same; that all payments on said mortgage had been made to Whitaker,

who was the only person the plaintiff knew in connection with said mortgage; that Whitaker was not only the attorney named in the mortgage, but was, from the date of the mortgage until 1919, the attorney and agent for the bank and also a director of the bank; that the bank and the assignee had refused to give the plaintiff credit for the payments made on said mortgage; that the assignee had advertised the property for sale, and that the mortgagor was ready, willing and anxious to pay the balance due on the mortgage, and "the costs incurred in connection with said foreclosure matter"; and praying that the defendants, upon the payment of the balance due on said mortgage and said costs, be required to release the mortgage, and that they be restrained from selling the property.

The defendants answered the bill, admitting that Whitaker had "at times" been employed by the bank to attend to special matters of business for it, and was a director of the bank, but denying that he was ever authorized to act for the bank in the collection of the mortgage debt or the interest thereon, and alleging that the assignment of the mortgage and the record of the same was notice to the plaintiff that the bank held the mortgage, and that the bank was entitled to receive the entire mortgage debt of nine hundred dollars and interest thereon from January 22nd, 1922.

The evidence was taken before the court, and the plaintiff produced the original mortgage, which had been in the possession of the bank ever since the assignment to it, and which bore the following endorsements: "Interest paid to January 22nd, 1915; interest paid to January 22nd, 1916; interest paid to January 22nd, 1917; interest paid to January 22, 1918; interest paid to January 22, 1919; interest paid to January 22, 1920," and proved by Mr. Whalen, who was cashier of the bank from 1918 to 1922, that all of said endorsements were made by some one in the bank, as no one else had access to the papers of the bank, and that Whitaker was a director of the bank from 1913 to 1919, and counsel for the bank from December 13, 1913, to January 1, 1920. The plaintiff also produced in evidence a number of receipts signed by

Whitaker for sums paid by it on account of the mortgage and interest as follows: One dated January 22nd, 1915, for $32, on account of interest; one dated January 22nd, 1916, for $32 on account of interest; one dated January 22nd, 1916, for $322 on mortgage and interest; one dated January 22nd, 1917, for $100 on mortgage; one dated January 22nd, 1917, for $106 on account of mortgage and interest; one dated March 23rd, 1917, for $110 on mortgage, and one dated June 13th, 1919, for $140 on mortgage. James P. Smothers, who was one of the board of trustees of the parsonage property when the mortgage was executed, and who was still a member of said board, testified that he was a member of a committee of said board appointed to borrow the money to pay for the building of the parsonage, and that the committee went to Belair on Saturday and tried to get the money from Mr. Edward Webster and Mr. Jacobs; that as the committee had to report the following Tuesday, he went to Belair on Monday to see Mr. Whitaker and asked him if they could not borrow the money from him; that he told Mr. Whitaker that they wanted nine hundred dollars, and that they wanted to know if they could borrow it from him so that he could report to the board of trustees that night, and that Mr. Whitaker told him to tell the board of trustees that he would loan the money to them; that he reported to the trustees, and that the trustees and the pastor of the church went up to see Mr. Whitaker and "fixed" the matter up; that Mr. Whitaker loaned the money with the understanding that it was his money; that the money subsequently paid on account of the mortgage was paid to Mr. Whitaker, and that they "got receipts from him for it," and that they did not know anybody else in the matter "except Mr. Whitaker" until all the parsonage money had been paid except about one hundred dollars, and until the Rev. Washington got a notice from the bank that they owed the nine hundred dollars and interest thereon; that the last payment they made on the mortgage was on June 13th, 1919, and that at the time of said payment they asked Mr. Whitaker for a statement of the balance due, as they wanted to settle it up, and

that he said that he did not have time to do it then; that
after they got the notice from the bank they employed coun-
sel and placed the one hundred dollars in his hands to pay
the balance due; that they never knew anything about the
bank having the mortgage until they received the notice from
the bank after all the mortgage debt had been paid except
one hundred dollars, and that the trustees of the parsonage
never paid anything after they got that notice.

Dr. Warner, a witness for the defendants, who had been
president of the bank for three years and a director ever
since its organization, testified that Whitaker had no "duties
whatever with reference to" the mortgage in question.   On
cross-examination he testified that Whitaker had no "duties"
at all in regard to the mortgage; that about the time the
mortgage was executed and assigned to the bank it was de-
livered to the bank and had been kept in its possession ever
since; that he did not know whether notices were sent out
by the bank in regard to innterest on the mortgage, but that
it was the custom of the bank to send such notices; that he
did not know who paid the interest on the mortgage up to
January, 1920, and when asked by the plaintiff whether he
was present at any meeting of the directors when the board
authorized any one "to notify these people" that the mortgage
belonged to the bank, he said that the only incident he knew
of in regard to it was that a committee was appointed "when
the mortgage was first brought up.   Mr. Tucker and Mr.
Johnson were appointed a committee to go and see the par-
sonage; and the pastor was notified by Mr. Tucker and Mr.
Johnson that the bank would take over the mortgage"; that
he was not present at the time the pastor was notified, but
was informed of it "when the committee came in," and that
Mr. Johnson and Mr. Tucker were not present at the trial
because Mr. Johnson was paralyzed, and they could not get
Mr. Tucker because he lived in Delta, Pennsylvania.   On
motion of the plaintiff the statement of the witness as to
what the committee told him was stricken out by the court
below.   As Emory E. Johnson, referred to by Dr. Warner,
was sick and could not attend the trial, the court authorized

counsel to take his testimony at his home. The defendants then produced William Johnson, who testified that he was secretary of the board of trustees of the parsonage in 1914; that he received notice of interest due on the mortgage through the pastor, J. L. Brown, and that they understood that the bank held the mortgage; that Mr. Whitaker was attorney for the trustees of the parsonage. On cross-examination he testified that Rev. Brown was pastor for five years, and that when he left Rev. Washington took his place and was pastor for five years, and was succeeded by Rev. Jones, who was pastor for sixteen months; that Rev. Brown left about 1916, and that he, witness, paid the interest on the mortgage to Mr. MacNabb in 1921 and 1922 with the money raised by the people of Asbury Church. When asked if he had not been put out of the board of trustees in 1921 on account of his rescality, he said that he had never been put out, and when asked if he did not know when he paid the interest in 1921 that the trustees had decided not to pay it, he said that he was not at the meeting. Emory E. Johnson testified that he had been a director of the bank since its beginning; that in the early part of 1914 he and Mr. Tucker examined the property mentioned in the mortgage; that when they went there they met the pastor and told him that they had come from the bank to look at the parsonage, and that after they had looked over the property they told the pastor that they thought the bank would take the mortgage, and that they then went back and reported to the bank. On cross-examination he said that he could not remember whether the party they talked to when they went to look at the property was a "light or dark fellow," but that he lived there, told them that he was the preacher and took them through the house; that he also told them his name, and that he, witness, thought his name was Brown. Dr. Warner, when recalled by the plaintiff, testified that he had been president of the bank for three years; that Walker had been employed by the bank until about three years ago. When asked if the bank did not have trouble with him, Walker, he said, "There was no shortage * * * There was a difference in the accounts, but

we couldn't exactly prove it. There was no way of proving it, but there was a difference in the accounts." When asked if his friends did not make it up, he said, "Yes, sir; his father-in-law."

The contention of the appellant on the evidence, which we have set out at some length, is that Whitaker was not only the agent of the bank "by direct appointment, but by ratification of his acts by the bank." The weakness of this contention lies in the fact that it is not supported by the evidence produced by the plaintiff, or that offered by the defendants. The evidence of the defendants is that, while Whitaker was appointed counsel for the bank, he was authorized to act for the bank only in such matters as were committed to him, and that he was never authorized by the bank to collect any part of the principal or interest of said mortgage, while the evidence produced by the plaintiff is that it never knew anybody in connection with the mortgage but Whitaker; that it made the payments to him, not as the agent of the bank, but as the owner of the mortgage, and that it never knew that the bank had any interest in the mortgage until after all the payments had been made, and it received the notice from the bank calling on it for the principal and interest thereon from January 22nd, 1920. Under such circumstances the mere acceptance by the bank of the interest from Whitaker does not tend to establish his authority to collect it as the agent of the bank, or amount to a ratification of such an agency. As the plaintiff did not apply directly to the bank for the loan, the application to the bank must have been made by Whitaker as the agent or representative of the plaintiff, and when he paid the interest on the mortgage the bank had a right to assume that he was still acting as the agent of the plaintiff. The appellant quotes and relies upon the statement of CHIEF JUDGE ALVEY in *Andrews* v. *Clark*, 72 Md., p. 433: "It is a very well settled principle of law that if a person has dealt with an agent within the limit of the authority confided to him, or within a course of business by the agent which has been sanctioned and approved by the principal, such person has the right to assume, if not otherwise

informed, that the authority in the agent continues; and when the dealing continues after the authority is revoked, the principal is, nevertheless, bound, unless notice of the revocation of authority is brought home to the party so dealing with the supposed agent." The statement of the principle referred to shows that it has no application to the facts of this case. It rests upon the fact, as its foundation, that the dealings were with one supposed to be the agent of the principal. In this case the plaintiff dealt with Whitaker, not as the agent of the bank, but as the owner of the mortgage. In the case of *Brager v. Levy,* 122 Md. 554, this Court, after stating the general rule "that the power of an agent to bind his principal rests upon the authority conferred upon him by the principal," and after referring to the rule in regard to the apparent scope of an agent's authority, said: "The authority must, however, have been actually apparent to the third person, who, in order to avail himself of his rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence." Here, as we have said, the plaintiff not only did not deal with Whitaker in reliance upon his apparent authority as the agent of the bank, but did not deal with him at all as the agent of the bank.

Nor does the fact that Whitaker, at the time he received the several payments from the plaintiff, was a director of the bank, make the bank liable for his failure to pay them to the bank. All the payments made by the plaintiff were made at Whitaker's office and not at the bank, and there is no evidence to show that Whitaker was ever authorized as a director to receive money due the bank, or that the plaintiff made the payments to him as a director of the bank. In the case of *Schuck v. Bramble,* 122 Md. 411, JUDGE STOCKBRIDGE, speaking for this Court, said in reference to the allegations of the *narr.* in that case: "The conversion, if there was any, if made while acting in the defendant's capacity as receiving teller, was one for which the bank itself would be responsible, while if made by the defendant independently of his employment by the bank, would result in

no liability on the part of the bank, even though the defendant was at the time in the bank's employment." See also *Demarest* v. *Holdeman,* 34 Ind. App. 685, 73 N. E. 714. It is said in 3 R. C. L., sec. 65, p. 439, under the title of "Banks": "An individual director, as such merely, is not clothed with any power to bind the bank by his acts or statements," and on page 457 of the same volume it is said, in reference to the liability of banks for wrongful acts of an officer or agent, "In order that the bank may be held liable it is, of course, necessary that the transaction be with the bank and not with the officer as an individual."

It is also urged by the appellant that it was the duty of the bank to notify the plaintiff that the mortgage had been assigned to it, and that Whitaker was not its agent, and not to make any payments to him. But according to the evidence in the case, the mortgage was assigned to the bank a few days after its execution, the assignment was promptly recorded and the mortgage was kept in the possession of the bank, and the testimony of the president of the bank and of one of its directors, who examined the property with the view of making the loan, tends to show that the plaintiff knew that the mortgage belonged to the bank. The plaintiff had, therefore, constructive, if not actual, knowledge of the bank's title to the mortgage, and there is, as we have said, no evidence in the case to show that Whitaker had either actual or apparent authority from the bank to collect any part of the mortgage debt, or that the bank had any reason to believe that Whitaker was holding himself out as the agent of the bank.

As said by the learned court below, "It is, of course, a serious matter for the church to lose" the money it paid on account of the principal of the mortgage, but as there is no evidence in the case to show that the bank was responsible for the loss, we must affirm the decree dismissing the plaintiff's bill.

*Decree affirmed, with costs*