## HAGERSTOWN BANK & TRUST COMPANY ET AL. *v.* COLLEGE OF ST. JAMES.

[No. 23, October Term, 1934.]

*Decided January 5th, 1935.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Edward Oswald, Jr.,* and *Frank B. Ober,* with whom were *George N. Oswald* and *Janney, Ober & Williams,* on the brief, for the appellants.

*Robert H. McCauley,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Trustees of the College of St. James, herein called the school, is a body corporate, incorporated by chapter 253 of the Acts of 1843, and for many years has owned, maintained, and conducted in Washington County, Maryland, a preparatory school for boys.

The Hagerstown Bank & Trust Company, herein called the bank, is a Maryland corporation which was on and prior to February 24th, 1933, engaged in the general banking business in Hagerstown in Washington County and in connection with that business also operated and conducted a "trust department."

On March 18th, 1930, the school borrowed $20,000 from the bank, and, to secure the loan and the interest thereon at six per cent., executed to the bank a mortgage maturing in one year on the school property, which comprised about 31.48 acres of land and the school buildings located thereon. By payments made from time to time in the interval, it paid on account of the principal mortgage debt $9,000, so that on February 24th, 1933, there remained due on account of the principal debt $11,000.

At that time the school had on deposit with the bank, under an account entitled "Trustees of St. James School," $11,038.31, and the account was in that state when, on the following day, acting under a proclamation of the Governor of the State declaring a banking holiday, the bank failed to open for business. It remained closed until, act-

ing under the power and authority of chapter 46 of the Acts of 1933, the bank commissioner of Maryland, on March 4th, 1933, took custody, control, and management of the bank, from which custody, control, and management it had not, prior to the filing of the bill in this case, been discharged.

On April 28th, 1933, the school made a lawful tender to the bank of $372.19, which, with the sum standing to its credit on the books of the bank, covered the whole mortgage debt, principal and interest, demanded that the bank apply the balance due by it to the school, together with the sum tendered, on account of the mortgage debt and interest, and release the mortgage. The bank refused to comply with that demand, and on October 6th, 1933, the school filed the bill of complaint in this case against the bank, the bank commissioner of the State of Maryland, and Edward Oswald, Jr., who had been on July 10th, 1933, appointed conservator of the bank.

In addition to the facts stated, it appears from an exhibit filed with the bill that on September 14th, 1931, the bank assigned the mortgage to the Nicodemus National Bank of Hagerstown, and that on November 20th, 1931, that bank reassigned it to the Hagerstown Bank & Trust Company, and that both assignments were promptly recorded.

The bill, after stating these facts, further alleged: "That the said mortgage remains open and unreleased upon the land records of Washington County as a lien upon the lands and property of your orator more particularly described as aforesaid and that it is inequitable and unjust that the same should remain unreleased as a cloud upon the title of your orator so as to prevent it from securing a loan elsewhere upon its said property. Your orator further alleges that it permitted said account to remain on deposit with the said the Hagerstown Bank & Trust Company prior to and on said 24th day of February, 1933, because it had been advised that it was entitled to the right of set-off against the said mortgage in event the said bank should become insolvent while holding the

said mortgage. That your orator has been at all times and is still ready, able and willing to pay in cash to the Conservator of the Hagerstown Bank & Trust Company the said sum of $372.19 which was tendered by your orator on April 28th, 1933, in full payment and satisfaction of the said mortgage and which tender the said Hagerstown Bank & Trust Company and the defendants in this cause have refused and now refuse to accept."

Upon those averments the school prayed that the defendants be required to allow the set-off, to accept the tender in full satisfaction of the balance due on the mortgage debt, and to release the mortgage.

The defendants, in the fourth paragraph of their answer, alleged, as a defense to the case made by the bill, that the bank had for a valuable consideration assigned the mortgage to the Nicodemus National Bank, and that on the 20th day of November, 1931, The Hagerstown Bank & Trust Company, acting in a fiduciary capacity, had in its hands uninvested funds belonging to various trust estates which it was administering, and, desiring to invest said funds, it did on said date use the same in purchasing said mortgage from the said Nicodemus National Bank of Hagerstown, who was then the holder thereof"; that, acting in a "fiduciary capacity," it applied the funds of nine trust estates to the purchase of the mortgage, and "that upon the payment to the Nicodemus National Bank of Hagerstown the sum of .$13,659.46 out of and from the trust funds above mentioned on the 20th of November, 1931, it did assign said mortgage to the Hagerstown Bank & Trust Company, which said assignment was duly recorded as will appear by reference to 'Plaintiff's Exhibit Mortgage'; that although in above mentioned assignment of said mortgage from the Nicodemus National Bank, it does not appear that the Hagerstown Bank & Trust Company acquired and took title to the same in a fiduciary capacity, however, said mortgage did not then, nor has it since become a part of the individual property and assets of the Hagerstown Bank & Trust Company, but on the contrary it did become and has ever since comprised in-

vested corpus or a part of the property and assets of the above mentioned trust estates, respectively, to the full extent and in the respective amounts as above set forth, with the exception of those cash payments made on the principal of said mortgage as hereinafter accounted for"; that it had applied payments on account of the mortgage debt to payment in part of those portions of the mortgage which comprised the "invested corpus" of certain of these trust estates.

The plaintiff demurred to that paragraph of the answer, and, that demurrer having been sustained, the case was submitted for decree on bill and answer, whereupon the court decreed that the defendants, upon the payment by the plaintiff to them of $372.19, execute and deliver to it a valid legal release of the mortgage, and that they pay the cost of the proceeding. From that decree, the defendants have taken this appeal.

The vital and important question presented by the appeal is whether a mortgagor who has executed a mortgage to a bank, which is by its charter authorized to act also as a trustee, is entitled to set off against his mortgage debt a debt due to him by the bank, where the bank, without notice to him, to the *cestuis que trust*, or to any other person, and without any formal transfer, physical segregation, or apparent authority, has apportioned the mortgage debt severally among different estates which it represented as trustee, but where it did in fact use the uninvested funds of such estates to buy the mortgage.

The appellants contend that it is not so entitled, because they say the debts lack mutuality, in that the debt due to the school from the bank is owed by the bank in its own proper, private, individual corporate capacity, whereas the debt which the school owes is due to the bank as a trustee and therefore in a representative capacity. The appellee, on the other hand, appears to take the position that as to it, at least, the bank must be treated as holding the complete and exclusive title to the mortgage for its own particular corporate uses and purposes, wholly unaffected by any trust: that therefore the debts are mutual;

652

and that it is entitled to have the debt of the bank to it set off against its debt to the bank.

From these contentions it is apparent that the real issue in the case is not whether a debt due on his own private account to a creditor by one who happens to be a trustee can be set off against a debt due by the same creditor to him as trustee, for it is well settled that that cannot be done [*Ghingher v. Fanseen*, 166 Md. 519, 172 A. 75, 77, 78; *Doxen v. Wagner*, 142 Md. 447, 121 A. 254; *Perry on Trusts* (7th Ed.) p. 1382; *Lewin on Trusts* (13th Ed.) 689, 692], but whether upon the facts of this case the bank is as to the school estopped from denying that the mortgage was held by it for its own private corporate uses and purposes, for it is equally well settled that where the demands are in the same right, set off will be allowed, *Id.*

In dealing with that question, *Colton v. Drovers' Perpetual Building & Loan Assn.*, 90 Md. 85, 45 A. 23, 26, and Code, art. 66, sec. 25, cited in support of the appellee's position, are not controlling. In the *Colton* case there was no question of setting off a debt due in *autre droit*, for there Colton's demand against the building association and its demand against him were in the same right, so that the question presented here was not considered.

Article 66, section 25, Code, provides: "The title to promissory notes and other instruments hereafter made, and debts hereafter contracted, secured by mortgage or deeds in the nature of a mortgage, shall both before and after the maturity of such notes, other instruments or debts, be conclusively presumed to be vested in the person, persons or body corporate holding the record title to such mortgage or deed in the nature of a mortgage; and if such mortgage or deed in the nature of a mortgage is duly released of record, the promissory notes, other instruments or debts secured by such mortgage or deed in the nature of a mortgage, shall both before and after the maturity of such promissory notes, other instruments or debts, be conclusively presumed to be paid so far as any lien upon the property conveyed by said mortgage or deed in the nature of a mortgage is concerned."

The manifest purpose of that statute was to quiet the title to real and leasehold property by removing the doubt occasioned by the loss or destruction of promissory notes secured by mortgage, and to protect the parties to the mortgage, and their privies, against any loss which they or those claiming under them might suffer through the fact that the mortgage and the mortgage note or debt might not be in the same hands. It is true that the statute embraces within its scope "debts," as distinguished from notes, secured by mortgage, but in view of the preamble to the original act, chapter 719 of the Acts of 1910, the mere use of that word cannot be taken as evidence of an intention to confer upon strangers to the mortgage, other than assignees of the mortgage debt, the mortgage notes, or the mortgage, any rights not existing before its adoption, nor indeed upon the mortgagor any right other than that of assuming as a matter of law that, in any transaction connected with or arising out of the mortgage, that the title to it is in the holder of the record title.

The legal title to the mortgage and the debt secured thereby, however evidenced, is under the statute conclusively presumed to be in the mortgagee *(Baltimore v. Harper,* 148 Md. 239, 129 A. 641), but if the holder of the legal title has used trust funds to purchase the mortgage, he may nevertheless hold the legal title in trust for the *cestui que trust,* and strangers cannot complain unless they have been misled by the record to their detriment as to some matter actually connected with or arising out of the mortgage, or the mortgage debt. See *In re Bowling Const. Corp.* (D. C.) 19 Fed. (2nd.) 604, affirmed *Sapero v. Neiswender* (C. C. A.) 23 Fed. (2nd.) 403; *Doxen v. Wagner, supra; Dickey v. Pocomoke City Nat. Bank,* 89 Md. 296, 43 A. 33.

There is nothing in that construction of the statute inconsistent with the conclusion announced in such cases as *First Nat. Bank of Denton v. Kenney,* 116 Md. 30, 81 A. 227, that a bank which accepts a deposit of trust funds without knowledge or notice of the fact that they are trust funds, and deposits such funds to the personal account of

the depositor, can apply them to the payment of such depositor's personal debt to the bank, for in such cases it is the depositor who is the trustee and not the bank, while here it is the bank itself which has used trust funds to purchase property for the trust estate. The court there stated a rule widely but not universally recognized (*Brady v. Am. Nat. Bank*, 120 Okl. 159, 250 P. 1106; *Morse on Banking*, p. 766; *Lewin on Trusts*, p. 689; *Everglade Cypress Co. v. Tunnicliffe*, 107 Fla. 675, 148 So. 192), which is peculiar to banking practice (*Miller v. Farmers' & Mechanics' Bank*, 30 Md. 392), but is not applicable here.

Nor is it inconsistent with *Churchville Circuit v. MacNabb*, 145 Md. 113, 125 A. 526, where the mortgagor paid money on account of the mortgage to the orginal mortgagee when the record title to the mortgage was under a duly recorded assignment in another person; *Morrow v. Stanley*, 119 Md. 599, 87 A. 481; *Bower v. Kelbaugh*, 147 Md. 366, 128 A. 37, 38; *Sennett v. Taylor*, 157 Md. 108, 145 A. 358; *Frederick County Nat. Bank v. Schlosser*, 152 Md. 609, 137 A. 351, involving somewhat similar facts, for what the court had in mind in those cases, as well as in *Baltimore Am. Ins. Co. v. Ulman*, 165 Md. 640, 170 A. 202, is expressed in the following statement in *Bower v. Kelbaugh, supra:* "Which of two possible innocent losers on the one side or the other is by law charged with the duty of putting the mortgagors on guard against paying to the wrong person after assignment, the mortgagors themselves or the assignee? The authorities are not unanimous in their answers to this question. The answer is to be found in the recording statutes, including, in Maryland, a provision, section 25 of article 66 of the Code, which directs the mortgagor to the record as showing conclusively the ownership of the mortgage debt. The learned court below reviewed the statutes and the decisions then before him carefully, and cogently presented the view that the assignee is charged with warning the mortgagors. It was with this view that the decree was given for the complainants. But the question has now been decided by this court, adversely to that view, in *Churchville Circuit v. MacNabb*, 145 Md. 105, 125 A. 526."

But in this case there is no showing of any kind that the money deposited by the school in the bank was paid on account of the mortgage debt, or that the depositary was notified that it was deposited to accumulate for that purpose. On the other hand, so far as the record discloses, it was deposited in the general account of the school subject to its check at any time, and there is no evidence that the school authorized the bank to apply it or any part of it to the payment of the mortgage debt. In other words, the deposit was made by the appellee with the bank as a bank and not as a mortgagee.

It is true that the school permitted "said account to remain on deposit" with the bank because it was "advised" that, in the event of the bank's insolvency while holding the mortgage, it would be entitled to set off the deposit against its mortgage debt, but it does not appear who gave that advice, nor does it appear that it withdrew its account during the period when the Nicodemus Bank held title to the mortgage. So that, as to its deposit, its relations with the bank were those of debtor and creditor, and the statement in *Colton v. Drovers' Perpetual Building & Loan Assn.*, *supra*, that "if the bank had not failed, it could have applied the deposit of the appellee towards the payment of the note," is not applicable to the facts of this case. For if the bank held the mortgage as a trustee, and the deposit as a mere bank, it had no right to pay its debt as a bank to its depositor with the depositor's debt to the bank as a trustee. That conclusion would seem to be inevitable, whether the depositor knew of the fact that the bank held the mortgage as trustee or whether it did not know of that fact. The principle upon which it rests is stated in 65 *C. J.* 535 *et seq.* in this language: "Trust property is not liable for the trustee's individual debts, and cannot be reached by attachment, or execution, and this is true not only in express trusts, but also in resulting and constructive trusts. The rule applies although the trust is oral, and unless a statute provides otherwise, or unless the trustee obtains credit by reason of the trust, with the acquiescence of

the beneficiary, even though the creditors have no knowledge of the existence of the trust, the estate being in the name of the trustee." That statement is in substance what was said in *Carson v. Phelps,* 40 Md. 73, 99, and its application is illustrated by cases collected in notes 79 to 88 of section 284 of the article on "Trusts," 65 *C. J.* 535, 536. See, also, *Lawrence v. Lincoln County Trust Co.,* 123 Me. 273, 122 A. 765; *Doxen v. Wagner,* 142 Md. 447, 121 A. 254; *Central Trust Co. v. Weeks,* 15 App. Div. 598, 44 N. Y. S. 828. This is not such a case as *Hoffman v. Gosnell,* 75 Md. 592, 24 A. 28, where the effort was made to affect the debtor's own property with a secret trust, for here it is conceded by the pleadings that the mortgage was bought not with the bank's money, but with trust funds, although there is nothing to show that the *cestuis que trust* knew any more than the school did that their funds were being used for that purpose. Nor is it a case where a debtor by some secret conveyance transfers the legal title to his property to another while he retains all the overt *indicia* of ownership. Here it is conceded by the pleadings that the mortgage was bought from the Nicodemus National Bank, to which it had been assigned, not with the bank's money but with trust funds, and if, in fact, that was the case, the transaction neither increased nor decreased the assets of the bank as a bank. It is true that apparent ownership of the mortgage apparently increased its assets by the value of the mortgage and may, although it is not so alleged, in some degree have led the school to believe that it was a safe depositary, but it does not appear that the *cestuis que trust* had any part in that deception, or that it affected the school's opinion of the bank's solvency.

If the bank actually bought the mortgage with its own funds, listed it among its assets as its own property, and the apportionment of it among the trust estates was a fictitious device to repair the waste of trust funds, the case would be different, but there are no such facts before us.

In *Doxen v. Wagner, supra,* it was held that the private

obligation to the mortgagor of one to whom a mortgage had been assigned for purposes of foreclosure and who held it in trust for the mortgagee could not be set off against the mortgage debt, because the property of the equitable owner could not be used to pay the assignee's debts. If the payment there had been to Doxen after the assignment, the statute would have applied, but it was made before, and, assuming that Doxen received it, since he received it when he had no interest of any kind in the mortgage, the mortgagor could not, after Doxen took title to the mortgage as trustee, subject the mortgagee's property, the mortgage debt, to the satisfaction of his claim against Doxen for the latter's default. Any other construction of the statute would lead to the most inequitable and unjust results, and would be wholly inconsistent with the purpose of the statute, as stated in the preamble to chapter 719 of the Acts of 1910, as well as with its history.

The ultimate question therefore is, Did the bank hold the mortgage as trustee? The facts relevant to that inquiry are found in the fourth paragraph of the appellants' answer, to which the appellee demurred. That demurrer was sustained, so that upon this appeal every well pleaded averment contained in that paragraph must be taken as true. It is therefore conceded that the bank did buy and pay for the mortgage with uninvested trust funds belong to trust estates which it was administering as trustee. The transaction was indeed open to suspicion; there is nothing in the record to show whether the bank was authorized to make such an investment, or whether prior to that investment the "uninvested" trust funds were traceable, as such, among the assets of the bank, or whether the transfer to the Nicodemus Bank was a mere device to give color to a plan to protect the trust estates at the expense of the general creditors of the bank; there was no assignment of the mortgage, nor does it appear even that the mortgage was apportioned on the books of the bank among the several trust estates on whose behalf it was purchased, and it is entirely

658

consistent with the record that the bank could have collected the mortgage debt and used the proceeds for its own private purposes, that it could have hypothecated it or sold it and vested the purchaser with an indefeasible title, for it does not appear that notice was given to any one that it had bought it with trust funds.

Nevertheless, in view of the concession that the mortgage was bought with trust funds, the *prima facie* presumption must be that the bank holds it as trustee (*Perry on Trusts*, sec. 28), and the demurrer to that paragraph of the answer should have been overruled. There was also for the same reason error in dismissing the bill.

The decree appealed from must therefore be reversed and the case remanded that further proceedings may be had in accordance with the views expressed in this opinion.

> *Decree reversed and case remanded for further proceedings in accordance with the views expressed in this opinion, costs above and below to abide the final result of the case.*