JOHN J. GHINGHER, BANK COMMISSIONER, *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
[No. 26, October Term, 1933.]

*Decided July 7th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Stuart S. Janney,* for the appellant.

*R. E. Lee Marshall, City Solicitor,* with whom was *Paul F. Due, Deputy City Solicitor,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The bank commissioner appeals in this case from an order for the issue of a writ of mandamus requiring release to the city of money received in tax collections by three banking institutions which are in custody and control under the Emergency Banking Act, discussed in opinions filed shortly preceding this one. Acts 1933, ch. 46. The collections had been made in cash, and in compliance with the terms of an agreement between the official city collector and the institutions, under authority of a city ordinance, the institutions had transmitted their cashier's checks to the city in payment; and the checks were not cleared and paid before the banking holidays and the passage of the Emergency Banking Act. A total amount of $95,000 was represented by the checks. The court below overruled a demurrer by the commissioner to the city's petition for the writ of mandamus, and the appeal is from that action.

The questions raised are whether the city collector was authorized to make an agreement with the banking institutions, adopting for the city the arrangement described for making remittances to the city, whether the agreement authorized a commingling of the cash collected with the banking funds, and, if it did, whether the city would in the situation existing under the emergency act be entitled to a release of the money collected. The court below decided that the city collector had no authority to agree upon an arrangement which would result in the commingling of the cash collections with the banking funds and establish a relation of debtor and creditor with the institutions, and that, the funds having been wrongfully commingled upon a mistaken assumption of that authority, the holding of the banks was upon a trust *ex maleficio,* under the principle expounded and applied in *Frederick County v. Page,* 163 Md. 619, 164 A. 182.

The City Charter, article 4 of the Code of Public Local Laws, sec. 6, subsec. 28 (a), gives the city "full power to provide by ordinance for collection" of city taxes; and section 42 of article 4 of the Charter, concerning the city collector, his duties and powers, provides that he "shall have such assistants, clerks and bailiffs as may be fixed by ordinances, and who shall perform such duties as shall be prescribed by ordinances not inconsistent with this Charter." It was under the supposed authority of these sections that in 1928 the Mayor and City Council adopted the plan of utilizing the banking institutions distributed about the city as places for payment of taxes and as transmitting agencies. An ordinance, numbered 512, and approved July 14th, 1928, by its terms authorized and directed the collector to designate and appoint banks and trust companies, which had been previously approved by the commissioners of finance of the city, as city depositories, to act as the collector's agents and assistants in the collection of state and city taxes, and to provide and establish the forms of receipts and reports and such other paraphernalia as he might deem necessary in the execution of the ordinance. It was provided that bills re-

ceipted by these agencies should have the same force and effect as if receipted by the proper city officials directly, and provided also that no agreement made by the collector with any bank or trust company pursuant to the authority granted by the ordinance should be binding on the city unless approved by the board of estimates. Under this plan taxes have been paid through the various banking institutions since the approval of the ordinance, at present under a second form of agreement made in 1931 by the collector with the institutions. It is accompanied by a set of rules, made part of the agreement.

By the terms of the present agreement the banking institution is to deliver to the city checks, drafts, and money orders drawn to the city or to the collector, but is to "send its own check to cover the amount of payments received by it in cash." It is provided that all moneys received shall be received and held as the money of the collector, "and said agent agrees to be responsible to the collector for the safe keeping of the same and the delivery thereof to the collector, in accordance with this agreement." "This is a limited agency," it continues, "and the agent shall have no authority of any kind from the collector except that herein expressly stated. * * * In the performance of all and every of the acts and things undertaken by it to be performed under and by virtue of this agreement, the said agent shall be deemed to be and taken as a trustee, and shall receive and accept all of said payments and shall hold the same as herein provided, and account for and transmit the same to the collector in the capacity, and with all of the duties and responsibilities, of a trustee in the premises aforesaid." The attached rules repeat that "Returns for cash collected must be made to the collector by the agent's personal check. * * * the agent sending its own check to cover the amount of payments received by it in cash."

It is the opinion of this court, first, that under the full charter power to provide by ordinance for collection of taxes, the city must be held to have been authorized to adopt the expedient of utilizing the banks for the purpose. The terms

of the power are broad and unlimited, and the method would seem to be an appropriate and convenient one, especially in a large city, many of whose inhabitants would find restriction to one central place of payment inconvenient. It appears to be an expedient adopted in cities of other states, and payment at banks is a method commonly adopted by organizations which receive many payments of debts or dues. The adoption of the expedient would seem to be not much more of an innovation than permitting payments by mail; moreover, innovations in method are not excluded by anything in the charter. If the Mayor and City Council, after the deliberation manifested in the passage of the ordinance and formation of this agreement, have been brought to the conclusion that the method is a good one, the charter seems to oppose no obstacle to adoption; and we conclude that it was within the charter powers.

Authority to use banks as collecting agencies implies power to adopt reasonable and convenient methods of remittance by the banks (*Planters' Bank v. Union Bank,* 16 Wall. 483, 501, 21 L. Ed. 473), and the agreed method of remitting for cash payments by cashiers' checks, resolved upon by the collector, with the approval of the board of estimates, seems to the court to be an eminently sound and reasonable one. The alternative of sending cash through the streets would be rather a departure from normal, sound methods; and, if done, the cash would presumably be returned to the banks to be added to the city deposits. Therefore the use of cashiers' checks seems to the court to be within the authority to utilize these collecting agencies. In so far, then, as remittance by cashiers' checks may have involved a commingling of so much of the collected funds with other funds of the bank, this court, differing from the conclusion reached by the court below, is of opinion that it was within the powers of the city to agree to the commingling, whatever the legal consequences of it might be.

It has been decided in the appeal of the city in relation to the express allowance in the Emergency Banking Act of an exemption of city deposits from the operation of the re-

straints upon withdrawals (*Mayor and City Council of Baltimore v. Pearson,* 165 Md. 273, 168 A. 105), that there could be no valid allowance of that exemption, and that the city must stand on an equal footing with all other depositors. In the case of *Ghingher v. Thomsen,* 165 Md. 318, 168 A. 123, the court has considered the legal position of trust funds or funds specially deposited, with relation to the restraint of the emergency act, and, in view of the conclusions there announced, the important, decisive question in this case, too, is whether the funds now claimed have been held in segregated form, or a form that has kept them separate and distinct from the deposited funds in the bank which are subject to withdrawals generally in ordinary course. Can the amounts represented here by the unpaid cashier's checks be regarded as never having been brought within those funds to which the emergency ban or restraint applies?

The contention on behalf of the city is that the form of contract with the collecting banks extends the trust relation of the collecting agent beyond and after remittance by the checks, and leaves the banks still trustees of the money represented; but, even if this should be correct, it would not answer the question to be decided, as this court sees it. Whatever the legal relation may be, it did not cause the holding of the funds apart from the bank's funds. On the contrary, the express arrangement of the parties was that cash collected should be placed among those funds to be drawn upon by the bank's own checks. That being true, then, whether the liability of the banks to the city for so much money was that of trustee or that of debtor, it follows from the decision in the case of *Ghingher v. Thomsen, supra,* that the funds are subject to the restraint upon withdrawals imposed by the emergency act, and that the city is not entitled to their release. The principles on which the conclusion is reached need not be repeated.

*Order reversed, with costs.*

ADKINS, J., concurs in the result.