HENRY G. PERRING ET AL. RECEIVERS *v.* BALTIMORE TRUST CORPORATION

[No. 91, October Term, 1936.]

*Decided February 12th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Harry N. Baetjer* and *Stuart S. Janney, Jr.*, with whom was *Isaac Lobe Straus* on the brief, for the appellants.

*G. Ridgely Sappington*, with whom was *D. Heyward Hamilton, Jr.*, on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City, and presents two questions for our consideration. The first involves the right of the Baltimore Trust Corporation, appellee, to collect items of interest, on a loan made by its assignor, the Baltimore Trust Company, to Hambleton & Company, out of the proceeds of

the collateral held by the Hambleton Corporation under a special agreement between the parties. The second involves the right to set off, against the balance due on this loan, a certificate of deposit of the Baltimore Trust Company issued to and held by the receivers of the Hambleton Corporation.

In order to understand the relative rights of these three banking concerns, it will be necessary to recite the course of dealings and the facts and circumstances surrounding the transactions in which these three concerns were engaged.

Hambleton & Company was indebted in a large sum of money to the Citizens & Southern National Bank. This bank was demanding payment, and threatening to sell certain collateral held by it as security for this loan. In order to pay this indebtedness, and to prevent the sale of the collateral, the Baltimore Trust Company, on July 11th, 1931, loaned to Hambleton & Company on its promissory note $200,000, with interest, payable on demand, and the Hambleton Corporation loaned to Hambleton & Company $276,122.98 on its promissory note with interest. At the time these loans were made Hambleton & Company was largely indebted to the Hambleton Corporation, and had delivered to it as collateral certain stocks and bonds. At the time of the loan of $200,000, arrangements were made between these three concerns whereby certain stocks, and a percentage of other stocks and bonds already held by the Hambleton Corporation, should be held by it as collateral security for the loan of $200,000. This arrangement was evidenced by a letter written to the Baltimore Trust Company by the Hambleton Corporation on July 11th, 1931, which was also the date of the loan and of the note of $200,000, with interest, given by Hambleton & Company to the Baltimore Trust Company. The part of this letter which deals with this transaction, and is here incorporated, states:

"Since the first of January, 1931, we have made loans to Hambleton & Company aggregat-

ing at this date $372,929.00; this is in addition
to the advance of $276,122.98 which we are to
make today; interest on the loans heretofore
made has been paid up to the first of July. As
collateral for the indebtedness, we have certain
securities, a list of which is attached hereto."

"In the event that any of the said collateral
is sold before repayment to you of the $200,-
000.00 which you are to advance today, we agree
that 23½% of the net proceeds of such sale shall
be paid to you on account of or in full payment
of the loan of $200,000.00 to be made by you, and
the remaining 76½% shall be applied by us on
the account of this indebtedness due to us on the
loans made since January 1st, 1931, including the
loan of $276,122.98 to be made today."

"Our respective advances shall be made to
Hambleton & Company and shall be evidenced
by its demand notes running with interest at six
per cent."

This letter and the collateral therein mentioned are
referred to in the promissory note of Hambleton & Com-
pany to the Baltimore Trust Company, of July 11th, 1931,
in this manner: "12,286 shares Haverty Furniture Com-
panies, Inc. $1.50 preferred and 23½% interest in other
collaterals as per agreement of The Hambleton Corpora-
tion dated July 11th, 1931."

A list of these stocks, bonds, and notes held by the Ham-
bleton Corporation and referred to in said note was
attached to the said letter and sent to the Baltimore Trust
Company. Thus it came about that the stock of Haverty
Furniture Companies, Inc., and 23½ per cent. of the other
stocks and securities owned by Hambleton & Company
and held by the Hambleton Corporation as collateral, were
pledged to secure the loan of $200,000, as evidenced by
the promissory note with interest. Neither this note nor
the obligations of Hambleton & Company held by the
Hambleton Corporation were paid, and in due course sales

of the collateral were undertaken for the purpose of satisfying these debts. On account of the widespread depression and financial distress, these banking institutions all became much involved. The Hambleton Corporation was placed in the hands of receivers. Hambleton & Company owed large sums of money it could not pay, and is alleged to have been insolvent, and the Baltimore Trust Company was closed, and has since been in process of liquidation. Prior to the closing of the Baltimore Trust Company, the Hambleton Corporation had been one of its depositors, and for this deposit a certificate was issued to it in the sum of $16,789.19, upon which certificate there was a balance due of $12,591.58.

No question is involved as to the transfer of assets and assumption of liabilities under the Emergency Banking Act (Acts 1933, ch. 46), and there is no dispute as to the facts in this case. In accordance with the agreement above set forth, upon the sale of the collateral and the payment of the proceeds thereof, curtailing the loan of $200,000, there remained to be paid from such sales of said collateral only $12,591.89, which amount the Hambleton Corporation refused to pay, because that was the amount due by the Baltimore Trust Company to the Hambleton Corporation, as a depositor, as evidenced by the certificate of deposit issued to the Hambleton Corporation. The Hambleton Corporation endeavored to effect a set-off as to these obligations. It is obvious that the debt due by the Baltimore Trust Company to the Hambleton Corporation was a direct obligaion, evidenced by a certificate of deposit, while the debt owing to the Baltimore Trust Corporation was an obligation of Hambleton & Company, pledged for the payment of which was a sum of money belonging to Hambleton & Company and held as pledgee or trustee by the Hambleton Corporation for that purpose.

The refusal of the Hambleton Corporation to further pay was based upon the claim, first, that its agreement with the Baltimore Trust Company, in relation to the securities pledged for the payment of the loan of $200,000,

did not bind it further than to pay the principal of said loan, and that the said collateral was not pledged as to the payment of interest thereon; secondly, that there was a set-off available to it against the Baltimore Trust Corporation, growing out of the above transaction.

In order to require the receivers of the Hambleton Corporation to pay the interest due on the loan and the unpaid balance on the principal, out of the proceeds of the sale of said collateral in its possession, the Baltimore Trust Corporation filed a petition in which it was prayed that the receivers be directed to pay the said balance on principal, and to pay the interest at the rate of six per cent. on the successive balances due on the said note. The case was twice argued in the Circuit Court of Baltimore City and a decree was filed on September 2nd, 1936, as follows: "The Court having found that the claim of Baltimore Trust Corporation for interest as set forth in its said petition should be allowed and that the right claimed by said Receivers of The Hambleton Corporation to set-off the balance due on a certificate of indebtedness issued to them by The Baltimore Trust Company should be denied," ordered the receivers to pay the two sums of money aggregating $38,534.67 with accrued interest on the $12,591.89; and from this decree this appeal is taken.

The effect of this decree was to deny the set-off of $12,591.89 and to require interest to be paid on the successive balances due on the said note, which interest amounted to $25,942. The Baltimore Trust Corporation claims that, from the very nature of the above banking transactions, the agreement with respect to the collateral should be so construed as to require the Hambleton Corporation to pay the interest on the loan of $200,000 out of the sale of the collaterals pledged, and that neither under the common law nor under the Emergency Banking Act (Acts 1933, ch. 46, sec. 71B) which went into effect on March 4th, 1933, could a set-off be maintained.

Considering these questions in the order above named, it must be borne in mind that these three institutions are banking concerns and lend money for the purpose of

earning interest and not as gratuities. The Hambleton Corporation was aware of this, and further knew that interest was to be paid on this loan, because by the very terms of the note upon which this loan was made there was an express provision for the payment of interest, and also the stipulation in the note that there had been "deposited with or given to the holder the following property as collateral for the payment of the note and interest thereon."

As between the Baltimore Trust Company, or Baltimore Trust Corporation, and Hambleton & Company, it is conclusive that the collateral was intended to secure both principal and interest. It is equally conclusive that, the collateral having been previously pledged to the Hambleton Corporation as security for large loans made by the Hambleton Corporation to the Hambleton Company, it had a right to restrict the pledge of such collateral or any part thereof to the Baltimore Trust Company. But has such restriction as to interest on the note in question been made by it?

The Hambleton Corporation was a party to this three-cornered agreement with respect to the loan of $200,000, and it knew the character, form, and effect of the loan, because in the letter above referred to there is a statement that "Our respective advances shall be made to Hambleton and Company and shall be evidenced by demand notes running with interest at six per cent," and it is obvious that it was the intention of the parties that the collateral should be given to secure this note just as it is listed or set forth in the note. The mere fact that it was stated that the collateral should be given for the loan of $200,000 is not to be taken as more than an identification of the loan to be made, and further in the letter there is a description of the manner in which the loan was to be evidenced or secured, and the stipulation is that 23½ per cent. of the net proceeds of sale of the collateral was to be paid on account or in full of the loan of $200,000, and the 76½ per cent. should be applied on certain loans of the Hambleton Corporation, including the

loan of $276,122.98, and that these advances or loans were to be evidenced by demand notes running with interest at six per cent.

It is a well-established principle that collateral pledged for the security of a loan includes interest as well as principal.

Thus The Hambleton Corporation knew that the loan was with interest at six per cent., and all of the parties fully understood and knew the details of these transactions, and their respective undertakings. In view of this we hold that the pledges of the Haverty Furniture Company stock, and the other stocks and bonds named as collateral in the note, and listed in the aforesaid letter, were intended to be security for the loan as made, which includes interest. No other rational conclusion can be drawn from the character of the business, the position of the parties, and the agreements and undertakings expressly made or assumed.

The second question concerns an alleged right of set-off, as previously mentioned. Reduced to its simple analysis, it may be stated as follows:

The Baltimore Trust Company owes to the Hambleton Corporation as a depositor the sum of $12,591.89, and Hambleton & Company owes to the Baltimore Trust Corporation exactly the same sum as a balance of principal on a note, and the Hambleton Corporation has in hand $12,591.89, as pledgee or trustee for Hambleton & Company, which sum, it was agreed, should be paid to the Baltimore Trust Corporation as a final payment on the said loan. The Hambleton Corporation says that these like sums of money should be set off and canceled and that this is a right of the Hambleton Corporation. The Baltimore Trust Corporation claims that a debt due to it by the Hambleton Corporation, in the capacity of trustee, cannot be set off against the debt due by the Baltimore Trust Company to the Hambleton Corporation in its own corporate capacity, even though the amounts are the same and have been definitely ascertained.

A cardinal rule in the law of set-off is that there must

be a mutuality of indebtedness between the parties. A debtor and creditor relation must exist between the parties as to both of the debts. The debtor in the one instance must be the creditor in the other and they must be identical. "The claim must be due to and from the same parties and in the same capacity." 24 *R. C. L.* 858 and cases therein cited, including *Smith v. Washington Gaslight Co.*, 31 Md. 12, 17, in which Judge Alvey said: "Set-off in equity is allowed upon he same general principles as at law. There must be mutuality in the demands. * * * To authorize a set-off the debts must be between the same parties in their own rights, and must be of the same kind or quality" (24 *R. C. L.* page 860), and demands in favor of and against third parties cannot ordinarily be allowed as counterclaims or set-off. The bringing in of additional or other parties, with the conflicting claims as set-off, should not be allowed, and therefore a party cannot use a demand against another party in favor of a third party. Many such statements and illustrations of these principles are given in the text in *R. C. L. (supra)*, supported by numerous citations of cases.

In a recent decision of the United States Circuit Court of Appeals (4th Circuit) in *Southern Ry. Co. v. Elliott & Gage, Receivers*, 86 Fed. (2nd) 294, the facts bear a strong analogy to those in the instant case. The set-off was there denied, after a full discussion of the principles governing the same. It is contended by the appellee that the necessary relationship between the parties does not exist as to both obligations, and that contention is supported by the great weight of authority.

The Baltimore Trust Company may owe the Hambleton Corporation, depositor, but does the Hambleton Corporation, in its own individual capacity and not as trustee, owe the Baltimore Trust Corporation? If so, by what processes in the change of the alleged original obligation has the debt or balance of the debt of $200,000 been lifted from the shoulders of Hambleton & Company and placed upon the Hambleton Corporation? How has the collateral, held first or principally for the benefit of the Hambleton

Corporation, then in lesser amount or proportion for the benefit of the Baltimore Trust Corporation, been so altered as to make this debt or balance of $12,591.89 an obligation due by the Hambleton Corporation, individually and not as trustee or pledgee. At most the Hambleton Corporation is merely the trustee to hold the proceeds of sale of the collateral, held by it but owned by Hambleton & Company and pay it for Hambleton & Company to the Baltimore Trust Corporation in liquidation of the debt due by Hambleton & Company to the Baltimore Trust Corporation. 49 *Corpus Juris,* page 920, sec. 52. That was the original purpose of the entire arrangement, and, as there has been no additional or supplemental agreement altering that situation, or changing the relations of the three parties, as originally established, it cannot be disturbed by this court so as to create other reciprocal obligations, whereby one of the parties would be placed in a more advantageous position than he had placed himself in under an arrangement which he had previously effected.

The appellee further claims that the provisions of chapter 46 of the Acts of 1933, known as the Emergency Banking Act, is controlling, and prevents this set-off, even if at common law it could be done. Let us examine this situation.

Section 71B of this act in part provides: "Provided, however, that nothing herein contained shall be construed to prevent any depositor or creditor of a banking institution from exercising his rights against any collateral security he may hold for his claim, or to prevent such institution from redeeming such collateral security, or to impair or postpone any right of set-off, but no debtor shall have the right to set-off any credit extended or deposit made before the passage of this Act against any obligations arising after the passage of this Act, and no deposit in or claim against any banking institution at the time of the passage of this Act shall be assigned to any debtor of such institution so as to create a right of set-off against his indebtedness thereto."

The Emergency Banking Act went into effect on March 4th, 1933. The loan had been made on July 11th, 1931. The deposits of the Hambleton Corporation existed prior to the enactment of the Emergency Banking Act, and to bring this case within the ruling of *Nolan Motors v. Ghingher*, 169 Md. 340, 181 A. 678, we must first determine whether the alleged obligation of $12,591.89 of the Hambleton Corporation, as pledgee, to the Baltimore Trust Corporation, arose after March 4th, 1933, and whether the depositor obligation arose before that time.

On February 2nd, 1936, $105,019.65 was still unpaid on the note of July 11th, 1931, but by April 8th, 1936, this indebtedness had been reduced to the said sum of $12,591.89. This balance evidently was purposely established with the intention of endeavoring to effect a set-off against the deposit obligation of equal amount. All other payments had been made for and on account of the Hambleton & Company obligation, out of the sale of securities owned by it and held by the Hambleton Corporation under the agreement contained in the letter of July 11th, 1931, as will appear by the letter. The obligation to pay the note or balance thereof did not arise until after the sale of the collateral, which was not concluded until early in 1936. The right of set-off, if any it had, did not arise until then, and this having been long after the passage of the Emergency Banking Act and the deposit obligation having arisen before the passage of the Emergency Banking Act, the rule as above stated applies, and the set-off must be denied, for this additional reason.

The right to establish and assert preferential rights by creditors of the same class, whether depositors or otherwise, is not favored under the law with respect to the liquidation of banking institutions, and unless such preferences are clearly established and in right and equity should prevail, under the policy of our emergency legislation with respect to banking institutions, as well as under the common law, they should not be sanctioned.

From what we have said and the views we have ex-

pressed as to both of the contentions of the appellants, the decree of the chancellor must be affirmed.

*Decree affirmed; costs to be paid out of the funds in the hands of the receivers of the Hambleton Corporation.*