MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
*v.* BALTIMORE TRUST CORPORATION
[No. 50, October Term, 1938.]

*Decided November 16th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles C. G. Evans, City Solicitor,* and *Charles R. Posey, Jr., Assistant City Solicitor,* for the appellants.

*G. Ridgely Sappington,* with whom was *D. Heyward Hamilton, Jr.,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore, on February 24th, 1933, had a deposit account, in the name of the City Collector, with the Baltimore Trust Company, and the balance then credited to the account was $130,032.93. On that day the Trust Company issued treasurer's checks to the City Collector for amounts aggregating $45,935.94. The checks represented tax collections made by the Trust Company for the City. Because of the Governor's proclamation of successive bank holidays, the Trust Company was closed from February 25th to March 4th, 1933, when it came under the custody and control of the Bank Commissioner of Maryland, by virtue of the terms of an emergency act of the General Assembly, chapter 46 of the Acts of 1933. The Trust Company remained under the Bank Commissioner's control until January 5th, 1935, when it was committed to the custody of the receiver appointed by the lower court in this proceeding.

As collateral security for its deposit account the City had received from the Trust Company, prior to February 24th, 1933, United States Government bonds of the par value of $200,000. Shortly after March 4th of that year the City sold the pledged bonds for $200,112.74, thus producing a fund of $70,079.81 in excess of the balance credited to its deposit account. As against that surplus the City claimed a right, which was disputed, to set off the aggregate amount of $45,935.94 of unpaid treasurer's checks issued by the Trust Company to the City Collector as remittances of tax collections. It also made an alternative claim of a preference with respect to the fund which those checks represented. The balance of the collateral fund, not affected by the City's claim of set-off or preference, was paid to the Trust Company. Subsequently the interest of the Trust Company in the surplus proceeds of the collateral was transferred to the Baltimore Trust Corporation, which has intervened by

petition for the purpose of having the question as to the City's asserted rights adjudicated. The Chancellor disallowed its claim of set-off or preference, and decreed that the City pay to the petitioner the sum of $23,565.14, being the amount of the reserved fund ($45,935.94), less $23,370.80 which the City, as a general creditor, was entitled to receive as dividends accruing from the liquidation of the Trust Company's assets.

Upon this appeal the argument for the City made no reference to any theory of preference for the amount due on the unpaid treasurer's checks, but was directed solely to its claim of set-off. The opposing contention is that the proposed set-off is unavailable because the debts it would involve are not mutual. The arguments on both sides agreed in regarding as a trust fund the surplus proceeds of the City's sale of the bonds pledged with it as collateral security for its deposit. But the parties to the appeal differ upon the question whether the treasurer's checks held by the City represent an indebtedness which is also impressed with a trust. It is contended for the City that an affirmative answer to the question is permitted and required by the terms of the agreement under which the Trust Company made the tax collections for which its checks were issued to the City Collector. That agreement was summarized and considered by this Court in *Ghingher v. Baltimore,* 165 Md. 324, 329, 168 A. 125, but, for the purposes of a decision as to the right of withdrawal then asserted, it was found unnecessary to determine whether the checks represented a trust fund. The petitioner argues that, with respect to the checks issued by the treasurer for the taxes collected by it for the City, the ordinary relation of debtor and creditor existed and that consequently there was no mutuality between such a liability and the obligation of the City to account for the surplus proceeds of the bonds it held in a fiduciary capacity as a pledgee. The familiar rule which regards mutuality as an essential element of the right of set-off has been recently applied in *Hagerstown Bank & Trust Co. v. College of*

*St. James,* 167 Md. 646, 649, 176 A. 276; *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75; and *Perring v. Baltimore Trust Corp.,* 171 Md. 618, 190 A. 516.

There was a ruling in the last cited case which obviates a decision of the question of mutuality argued on this appeal. In that case the Hambleton Corporation claimed the right to set off its deposit with the Baltimore Trust Company against an amount owing by the corporate depositor to the Trust Company on account of the sale of collateral pledged by a third corporation under an agreement giving the Trust Company an interest in the pledge or its proceeds. The sale of the collateral was made after March 4th, 1933, when the Emergency Banking Act became effective. It was provided by Section 71B of the Act that "no debtor shall have the right to set-off any credit extended or deposit made before the passage of this Act against any obligations arising after the passage of this Act * * *." It was held that the liability of Hambleton Corporation to the Trust Company, under their agreement, for the payment of a proportional amount of the money realized from the sale of the collateral securities, did not arise until they were sold, and as the sale was made after the passage of the Emergency Banking Act, the obligation of the pledgee corporation resulting from the sale could not be set off against its claim as a depositor, which had its inception before the statute was enacted. For that reason, and because the liabilities were determined to be lacking in mutuality, the asserted right of set-off was denied.

In this case it is admitted that the indebtedness of the City, on account of the surplus proceeds of the bonds held by it as collateral security for its deposit with the Trust Company, originated after the passage of the Emergency Banking Act. But it is contended that the City is not proposing to set off that indebtedness against "any credit extended or deposit made" before the Act was passed, and that the claim of set-off is therefore not within the terms of the statutory restriction. That is not, in our opinion, a sustainable theory. The agree-

ment under which the Trust Company accepted tax payments for the City provided that all checks, drafts or money orders received from taxpayers, (which were required to be drawn to the order of the Mayor and City Council or of the City Collector), and the Trust Company's own checks for cash payments of taxes, should be delivered to the Collector before noon on the day following the collections. It was agreed that all money received by the treasurer in payment of taxes should be "held as the money of the collector," and that in the receipt and remittance of such funds the Trust Company should act in the capacity and with the responsibility of a trustee. While the tax receipts in cash could be mingled with the Trust Company's own money (*Ghingher v. Baltimore, supra*), and were not to be entered in a deposit account with the City or the Collector, the agreement imposed upon the Trust Company, in regard to those collections, a liability to account for and remit them as the City's deposits. The specific provisions of the agreement prevent our acceptance of the view that such a right was not based upon either a "deposit made" or a "credit extended," within the purview of the limitation imposed upon the right of set-off by the statute.

*Decree affirmed, with costs.*