CHARLES E. COCKEY ET AL., TRUSTEES, *v.* JOHN D. HOSPELHORN, RECEIVER

[No. 29, January Term, 1940.]

*Decided March 5th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

82

*Theodore R. Dankmeyer,* with whom were *Niles, Barton, Morrow & Yost* on the brief, for the appellants.

*J. Purdon Wright* and *Arthur W. Machen,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The single question presented by this appeal is whether appellants, trustees of the Montvale Lumber Company, are entitled to set off the sum of $8587.79 admittedly owing by them to appellee as receiver of the Baltimore Trust Company on account of its distributive share of the lumber company's assets, against an amount of 23,186.21, representing a balance due them upon two certificates of indebtedness issued by The Baltimore Trust Company prior to the appointment of appellee as receiver of that corporation. Without filing an opinion, the chancellor, by sustaining appellee's demurrer to appellants' petition to require appellee to credit such certificates of indebtedness with the sum of $8587.91, answered that inquiry in the negative and the appeal is from that order.

During the year 1926, before the Montvale Lumber Company encountered financial difficulties, it had, in the usual course of business, borrowed from The Baltimore Trust Company upon notes certain sums of money aggregating $31,250 in addition to interest, but the lumber company on February 17th, 1927, being insolvent, made an assignment for the benefit of its creditors to appellants and The Baltimore Trust Company as trustees. On February 25th, 1933, the trust company became insolvent, and on January 5th, 1935, John D. Hospelhorn was by the Circuit Court No. 2 of Baltimore City appointed receiver therefor.

The Montvale Lumber Company trustees, after qualifying as such, liquidated a large portion of the assets of their assignor, whose creditors, by two dividends, have been paid the full amounts of their claims, exclusive of interest. On May 26th, 1932, a certificate of deposit for $40,000, bearing interest at the rate of three per cent

per annum and payable four months after date, was by the trust company issued to the trustees and represented funds received by the trustees during the course of liquidation and deposited by them with the trust company, which at that time was one of the Montvale Trustees. The funds were used by the trustees for the certificate of deposit, in order that some interest could be earned thereon. Those funds had been accounted for in the "Banking Department" of the trust company along with other funds identified as "Corporate Trust Department, Baltimore Trust Company, Baltimore, Md.", and the accounts segregating the total funds of the Trust Department as between the owners and beneficiaries thereof were kept only in that department. No check book or pass book was used in connection with the account, and withdrawals were made therefrom upon checks signed by the officers of the trust company without requiring the signatures of its co-trustees, but with their authority and approval. The certificate of deposit was issued to "Baltimore Trust Company, a/c Trustees Montvale Lumber Company," address, "c/o Trust Department," and at the time of the bank holiday, February 25th, 1933, the Montvale Trustees held a renewal of the certificate of deposit in the face amount of $40,000. Subsequently, partial payments were made and pursuant to the plan of reorganization of the trust company a certificate of indebtedness was issued in the name of "Baltimore Trust Company a/c Trustees Montvale Lumber Company, Baltimore, Maryland," in the face amount of $34,702.14, the balance due thereon.

The other certificate of indebtedness was issued to the Montvale Trustees subsequent to the appointment of the receiver for $3941.56 in pursuance of the plan of reorganization and represented funds theretofore retained by the trustees for ordinary receipts and expenses.

Appellee in support of an affirmance of the order appealed from urges: (1) That the claims under consideration are not mutual, (2) that the terms of the deed of assignment from Montvale Lumber Company preclude

set-off, and (3) that set-off is prohibited under the Emergency Banking Act (section 71B of chapter 46, Acts 1933), and cites the decisions of this court in *Perring v. Baltimore Trust Corp.*, 171 Md. 618, 190 A. 516, and *Baltimore v. Baltimore Trust Corp.*, 175 Md. 457, 2 A. 2nd 441, as sustaining its position.

1. It is undisputed that set-off is confined to mutual debts between the parties, that is, debts of the same kind and quality. 1 *Poe, Pl. & Pr.*, sec. 613; 24 *R. C. L.*, page 858, sec. 62; *Fidelity & Deposit Co. v. Poe*, 147 Md. 502, 128 A. 465; *Ghingher v. Fanseen*, 166 Md. 519, 172 A. 75; *Hagerstown Bank & Trust Co. v. Trustees of College of St. James*, 167 Md. 646, 176 A. 276; *Perring v. Baltimore Trust Corp., supra.*

But some consideration must be given as to the date to be used in determining the question of set-off, inasmuch as it may have an important bearing upon the mutuality of the claims. At the time it made the assignment for the benefit of its creditors, the Montvale Lumber Company owed money to the trust company, but the latter then owed nothing to the lumber company. Therefore, no question of set-off could then have arisen, and, during the period the Montvale Trustees were administering their trust prior to the insolvency of the trust company, no question of set-off arose because the latter was then able to pay its indebtedness to the Montvale Trustees and continued able to pay until February 25th, 1933, prior to the passage of chapter 46, Acts of 1933. However, on February 25th, 1933, when the trust company became insolvent, the Montvale Trustees owed the trust company a distribution on account of its claim, while the trust company owed the Montvale Trustees by reason of the deposit of funds with which they were chargeable. To apply the rule announced in *Ghinger v. Fanseen, supra,* would require a holding that the right of set-off was determinable as of February 25th, 1933, when the trust company became insolvent. See, also, *Morse on Banks and Banking*, sec. 338, note; *United States Brick Co. v. Middletown Shale Brick Co.*, 228 Pa.

81, 77 A. 395; *Gordon v. Anthracite Trust Co.*, 315 Pa. 1, 172 A. 114; *Williams v. Coleman*, 190 N. C. 368, 129 S. E. 818; Annot. 1 *A. L. R.* 807, and authorities there cited; 7 *C. J. "Banks and Banking,"* sec. 536, page 746; *Friedman v. Commissioner of Banks,* 291 Mass. 108, 196 N. E. 264; *Braver on Liquidation of Financial Institutions,* sec. 908, page 1060.

Appellee's arguments against the right of set-off runs in this fashion: Set-off can only be allowed where the claims are mutual, that is, where the opposite party could have set off his claim if sued by the party invoking the set-off; that the trust company could not have set off its claim against the lumber company if sued by the trustees of the latter; therefore, set-off cannot be allowed. It is admitted that a debt was owing from the lumber company to the bank, also that the bank owed a debt to the trustees, but it is insisted that the latter did not owe the bank until the ratification of the first distribution on August 11th, 1938, after the appointment of the receiver for the bank. But, in our judgment, it would be equally logical to argue that the trust company, as a bank, owed the three trustees of the lumber company the sum of $23,186.21, also that the Montvale Trustees owed the trust company, as a bank, the sum of $8587.79, and that the right to set off one debt against the other arose when the trust company became insolvent, inasmuch as the cross-demands were mutual and arose out of the same right and both claims were liquidated.

To support his contention that the debts were not mutual, appellee cites the following authorities: *Peurifoy v. Gamble,* 145 S. C. 1, 142 S. E. 788, 71 *A. L. R.* 783; *Allen v. Holleman,* 159 S. C. 200, 156 S. E. 446; *Akin v. Williamson,* Tenn. Ch., 35 S. W. 569; *Rochester Tumbler Works v. Mitchell Woodbury Co.,* 215 Mass. 194, 102 N. E. 438.

Of these authorities, that of *Peurifoy v. Gamble, supra,* perhaps as well as any other supports the view contended for. In that case, it was held that a claim by the Home Bank of Barnwell, against the receiver of the American

Bank & Trust Company of Columbia, S. C., on account of its distributive share of the assets of the latter bank, and that of the receiver of the last-named institution for assets collected by him and deposited in the former bank before its insolvency, were not mutual and could not be set off against each other. In so holding, the decree from which the appeal was taken, which allowed set-off, was reversed. The decision seems to have been based largely upon the view that the receiver was an officer of the court through whom the court took possession of the assets of the insolvent bank to prevent waste or destruction and to secure their ratable distribution among those entitled thereto; that the property in the hands of the receiver was in the possession of the court of his appointment, and, being merely an agency of the court, he had no personal interest in the dividends declared, except that of faithfully performing his duty as directed. The majority opinion conceded that the circumstances of the case were peculiar and that the decisions in other jurisdictions were not in accord. But the holding in *Peurifoy v. Gamble, supra,* and the authorities cited as disallowing set-off under facts similar to those before us, is certainly not universal. It has never been followed in the federal courts since the decision in *Gardner v. Chicago Title & Trust Co.,* 261 U. S. 453, 43 S. Ct. 424, 67 L. Ed. 741. In that case the O'Gara Coal Company became bankrupt in 1913 and the LaSalle Street Trust & Savings Bank held its note with security for $15,000. The trustee of the coal company deposited funds belonging to the bankrupt estate in the bank amounting to approximately $20,000 on June 20th, 1914, when the bank because of insolvency suspended business. A receiver for the bank was appointed by the state court and the trustee of the coal company filed a claim for the amount of his deposits, receiving dividends thereon. The bank receiver also filed a claim, first as an unsecured creditor and later as a secured creditor, against the coal company, and the trustee of the latter petitioned the court to set off the coal company claim for the bank deposit less dividends re-

ceived against the bank claim upon the note of the coal company. Set-off was denied and the petition dismissed by the Circuit Court of Appeals (278 Fed. 509). *Certiorari* was granted by the Supreme Court, and on hearing, the decree was reversed, with instructions to allow the bank's claim for such sum only "as may seem to the Court to be owing above the value of the security," and to "withhold dividends upon that sum until the debt due to the trustee has been paid." In the course of that opinion, delivered by Mr. Justice Holmes, it is said: "We assume that when money is deposited in a designated bank under section 61 of the Bankruptcy Law * * * it is deposited as other money is, and becomes the property of the bank, leaving the bank a debtor for the amount. But when this money was deposited with this Bank it seems that the Bank had notice that it was part of a fund appropriated to paying the Coal Company's debts, of which the note held by the Bank was one. We think that it would be inequitable to allow the Bank to proceed to diminish that fund without accounting for the portion that it had received. When the Bank accepted deposits from a fund against which it had a credit it must be taken to have known that it could not profit by the fact at the expense of other claimants. The Bank knew the whole situation. There is nothing to show that the Trustees of the Coal Company when they made their deposits knew that the Bank held the Coal Company's note. If they had known this fact it would be going far to say that they altered or could alter the position of their *cestuis que trust* for the worse. On the other hand the creditors of the Bank can stand no better than the Bank."

*Hood v. Brownlee*, 62 Fed. 2nd 675, involved facts substantially similar to those in the case before us. There one Patterson was indebted to the First Bank & Trust Company of Hendersonville in the amount of $41,250; he became bankrupt, and Brownlee was elected trustee of the bankrupt estate. In liquidating the estate, Brownlee deposited money of the bankrupt estate in the First Bank & Trust Company, which bank closed its doors, in-

88

solvent, on November 19th, 1930. Brownlee, as trustee, had on deposit assets of the bankrupt estate amounting to about $15,000, which amount was reduced by collections from certain sureties on the bank's bond as depository to approximately $6000. The questions in the case were: (1) Was there a right of off-set, claim against claim, or dividend against dividend? The Circuit Court of Appeals, affirming the District Court, answered "no." Could the bank receiver share in dividends from the bankrupt estate unless and until all creditors of the bankrupt estate had received the percentage of dividends on their claims which the balance of the trustee's deposit bore to the total of the bank's claim against the bankrupt estate? To this second question, the Circuit Court of Appeals, again affirming the District Court, answered "no."

Judge Parker, who delivered the opinion for the Circuit Court of Appeals, 62 Fed. page 676, said: "The question that next arises is whether the trustee in bankruptcy may set off the liability of the bank for the balance of the deposit against dividends to which the bank may become entitled on its claim allowed against the bankrupt estate, which is what the order appealed from virtually allows. As above indicated, we think that he may. The deposit is due by the bank to the trustee as representative of the estate of the bankrupt. Dividends are payable by him in the same capacity. The debts arising out of the deposit and the liability for dividends are, therefore, mutual and in the same right; and there is no reason for denying to the trustee the right of set-off. To look at the matter in another way, the bank received funds of the estate when the deposit was made. Now, when its insolvency has precluded the trustee from recovering these funds, it should not receive additional funds by way of dividends until other creditors of the estate have shared on a *pro rata* basis to an equal extent."

In that opinion the *Gardner* case, *supra*, was referred to as being in point, and the majority opinion in *Peurifoy v. Gamble, supra,* was disapproved, while the dissenting opinion in that case was referred to with approval. See,

also, in *Re Wingert* (D. C.), 16 Fed. Supp. 873. In that case the First National Bank of Hagerstown had become insolvent and a receiver was appointed October 5th, 1931. For some time the bank had acted as depository for bankruptcy funds in Allegany County, and the balance due five different trustees in bankruptcy at the time of the bank failure was approximately $82,000, representing various deposits made by them. Upon those deposits the bank had paid dividends of about $44,000, but the trustees by several dividends had allowed the bank a total of around $15,000 on claims held by it, but had withheld the dividends. In stating an account in the bankrupt estates, the referee showed the amount of the bank's claim and the dividends payable thereon and stated that distribution was to be set off against the deposit of the trustee in the insolvent bank. The bank receiver excepted, whereupon the referee and trustees asked for the court's instructions and Judge Coleman ruled (16 Fed. Supp. 874) that the right of set-off was well established and cited *Hood v. Brownlee, supra,* in support of the holding.

Since, on February 25th, 1933, the date upon which the trust company became insolvent, there was due from it to appellants the sum of $23,186.21, and at the same time there was due the trust company from appellants $8587.79, as its distributive share of the lumber company's assets, those debts were mutual, being of the same kind and quality.

2. It is insisted that set-off is precluded by the terms of the deed of assignment under which the trustees were to apply the proceeds of sales and collections after payment of expenses "to the payment in full of all debts due and owing by the said Montvale Lumber Company without preference or priority, except as by law provided * * *," etc. The contention is that the Montvale Trustees are bound by that provision, and that to recognize the rights they are here claiming would have the effect of creating a preference in favor of the other creditors of the lumber company over the claim of The Baltimore Trust Company which is also a creditor. A sufficient answer to that con-

tention is that if the asserted right or preference exists by law, the case is within the exception and cannot be affected by the provision in the deed of assignment.

3. Finally, we reach appellee's argument that by the terms of section 71B of the Emergency Banking Act set-off is prohibited by reason of the provision therein contained, that "* * * no debtor shall have the right to set-off any credit extended or deposit made before the passage of this Act against any obligations arising after the passage of this Act, and no deposit in or claim against any banking institution at the time of the passage of this Act shall be assigned to any debtor of such institution so as to create a right of set-off against his indebtedness thereto." Since we have already held that the right of set-off became fixed as of February 25th, 1933, prior to the date upon which the Emergency Banking Act took effect, it must follow that the quoted limitation with reference to set-off can have no application in the present case.

This view in no sense conflicts with anything which was said by us in *Perring et al. v. Baltimore Trust Corp.,* and *Baltimore v. Baltimore Trust Corp., supra.* In the first of those cases the decision was placed upon the ground that the right of set-off did not exist because the debts were lacking in mutuality; while in the second, because the indebtedness of the city on account of the surplus of the proceeds of the bonds held by it as collateral security for its deposit with the trust company originated after the passage of the act and, therefore, the limitation upon the right of set-off applied, and hence there was no right of set-off.

Assuming, as we are required to do, the truth of the allegations contained in the petition of appellants, it follows, for the reasons given, that, if sustained by proof, they are sufficient to entitle appellants to have their indebtedness for the trust company's distributive share of the lumber company's assets set off against the indebtedness due by the trust company to them. It must, therefore, be held that the chancellor erred in sustaining the

demurrer to that petition, for which reason the order appealed from must be reversed.

> *Order reversed, with costs, and cause remanded for further proceedings not inconsistent with the views herein expressed.*